

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-09-00336-CV

MONCRIEF OIL INTERNATIONAL, INC.                    APPELLANT

V.

OAO GAZPROM; GAZPROM                                    APPELLEES
EXPORT, LLC; AND GAZPROM
MARKETING & TRADING, LTD.

------------

## FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

This is an interlocutory special appearance appeal. Appellant Moncrief Oil International, Inc. appeals the trial court's order granting the special appearances filed by Appellees OAO Gazprom (Gazprom); Gazprom Export, LLC; and Gazprom

Marketing & Trading, Ltd.[1]  In its first, second, and fourth issues, Moncrief Oil contends that these three Appellees failed to negate all bases of personal jurisdiction.  In a fifth issue, Moncrief Oil argues that the trial court abused its discretion by refusing to compel the depositions of two key representatives of Appellees.  For the reasons set forth below, we hold that the trial court lacks general jurisdiction over Gazprom; that Gazprom Marketing & Trading, Ltd. is not, for jurisdictional purposes, fused with GMT USA;[2] and that the trial court lacks specific jurisdiction over Moncrief Oil's tortious interference with a business relationship claims and Moncrief Oil's misappropriation of trade secrets claims, both asserted against Gazprom and Gazprom Export.  Consequently, we will affirm the trial court's order granting Appellees' special appearances.

## II. FACTUAL BACKGROUND OVERVIEW

The jursidictional facts presented to the trial court were disputed.  Essentially, Moncrief Oil, a Fort Worth, Texas-based independent oil and gas company, asserts that it reached an agreement in 2004 with Occidental Petroleum Corporation for a Texas-based joint venture to focus on the importation of liquefied natural gas (LNG)

---

[1] ... Moncrief Oil also appealed the special appearance granted for OAO Gazprombank but subsequently filed a motion to dismiss OAO Gazprombank from this appeal.  We granted the motion, and OAO Gazprombank is no longer a party to this appeal.  Thus, we need not address Moncrief Oil's third issue challenging the special appearance granted for OAO Gazprombank.

[2] ... GMT USA is a defendant in the underlying suit but did not file a special appearance.

2

and the development of a regasification facility in Ingleside, Texas. Moncrief Oil alleges that in the course of its business, it developed confidential trade secret information relating to the marketing of Russian natural gas and LNG in the United States.[3] Moncrief Oil alleges that it offered Gazprom the opportunity to participate in the joint venture with Occidental and that, during negotiations concerning the joint venture, Gazprom and Gazprom Export learned trade secrets belonging to Moncrief Oil concerning the marketing, sales, and distribution in the United States of LNG. Moncrief Oil alleges that Gazprom and Gazprom Export misappropriated these trade secrets and used them for themselves—in fact setting up for themselves in Houston, Texas, the type of LNG regasification facility proposed by Moncrief Oil to be utilized in the joint venture—and that Gazprom and Gazprom Export tortiously interfered with the Occidental joint venture. Moncrief Oil filed suit against Appellees asserting these causes of action, as well as causes of action for conspiracy to tortiously interfere with the Occidental joint venture and for conspiracy to misappropriate trade secrets.

Appellees point out that Moncrief Oil had previously filed a lawsuit against them in federal court for breach of contract and negligent misrepresentation relating to Moncrief Oil's claimed interest in the Yuzhno-Russkoye Field, an oil field located in Russia. Judge Terry Means dismissed that lawsuit, concluding that "personal

---

[3] ... The trial court ordered various documents sealed. We have reviewed those records in our disposition of this appeal.

3

jurisdiction cannot constitutionally be exercised over the Gazprom Defendants."[4] Appellees claim that the present litigation is simply a second attempt by Moncrief Oil to pursue the same litigation that was dismissed by Judge Means. Moncrief Oil, however, points out that a Moncrief Oil affiliate is pursuing the Yuzhno-Russkoye Field related litigation in a German court and argues that the present litigation is separate from its prior suit.

Appellees filed special appearances, and the trial court granted them. Moncrief Oil perfected this interlocutory appeal.

### III. STANDARD OF REVIEW AND BURDENS OF PROOF

The standard of review and the burdens of proof that we apply in reviewing a trial court's ruling on a special appearance are recited extensively in the case law. Under the Texas long-arm statute, the plaintiff has the initial burden to plead sufficient allegations to confer jurisdiction. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). This minimal pleading requirement is satisfied by an allegation that the nonresident defendant is doing business in Texas. *See Assurances Generales Banque Nationale v. Dhalla*, 282 S.W.3d 688, 695 (Tex. App.—Dallas 2009, no pet.). The nonresident defendant has the burden of negating all bases of jurisdiction alleged in the plaintiff's petition. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *Am. Type Culture*

---

[4] ... Judge Means's ruling was affirmed by the Fifth Circuit. *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 310–11 (5th Cir. 2007).

4

*Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002), *cert. denied*, 537 U.S. 1191 (2003).

In determining whether or not a defendant has negated all potential bases for jurisdiction, the trial court frequently must resolve questions of fact. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). And when the trial court does not make findings of fact and conclusions of law in support of its ruling on a defendant's special appearance, all facts necessary to support the ruling that are supported by the evidence are implied. *See Retamco Operating, Inc.*, 278 S.W.3d at 337. These implied findings are not conclusive, however, when the appellate record includes the reporter's and clerk's records; in this situation, the implied findings may be challenged for legal and factual sufficiency in the appropriate appellate court. *BMC Software Belg., N.V.*, 83 S.W.3d at 795.

We review a trial court's conclusions of law as a legal question. *Id.* The conclusion that personal jurisdiction exists over a defendant is a conclusion of law that we review de novo. *Retamco Operating, Inc.*, 278 S.W.3d at 337.

The special appearance hearing conducted by the trial court here was nonevidentiary in the sense that no witnesses testified and no evidence was introduced at the hearing; counsel made Power Point presentations to the trial court.[5] All parties relied on affidavits, exhibits, and deposition excerpts attached to

---

[5] ... The Power Point slides have been made part of our record, and a reporter's record of counsel's arguments at the special appearance hearing was filed with this court.

5

their special appearances or responses. The trial court made no findings of fact or conclusions of law. On our own motion, we requested supplemental briefing from the parties on the issue of whether the nonevidentiary nature of the special appearance hearing in the trial court altered our standard of review in any way. We questioned how we could review a trial court's implied findings of fact for legal or factual sufficiency when no evidence was offered or introduced before the trial court at the special appearance hearing and the affidavits, exhibits, and deposition excerpts filed by the parties contained factual conflicts. That is, if in order to decide the special appearances, the trial court merely reviewed affidavits, exhibits, and deposition excerpts filed with it and made no credibility determinations, then we are in the same position as the trial court and implying all facts supported by the evidence in favor of the trial court's ruling seems inappropriate. *See Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 726–27 (Tex. App.—Corpus Christi 2006, pet. denied) (expressing similar concerns).

The parties filed supplemental briefs addressing our standard-of-review concerns, and based on the supplemental briefing, we conclude that although the special appearance hearing was nonevidentiary and despite our concerns, we must nonetheless defer to all implied findings of fact that support the trial court's grant of Appellees' special appearances so long as legally and factually sufficient

6

evidence—i.e., factual statements set forth in the affidavits, exhibits, and deposition excerpts filed with the trial court—exists supporting them.[6]

### IV.  THE LAW CONCERNING PERSONAL JURISDICTION

Texas courts may assert in personam jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees.  *Moki Mac River Expeditions*, 221 S.W.3d at 574.

### A.  Personal Jurisdiction Under the Texas Long-Arm Statute

The Texas long-arm statute sets out a nonexclusive list of activities that constitute doing business in Texas.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 2008); *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).  The broad language of section 17.042 extends Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit."  *PHC-Minden, L.P.*, 235 S.W.3d at 166; *Moki Mac River Expeditions*, 221 S.W.3d at 575.

---

[6] In its supplemental briefing, Gazprom points out two fairly recent Texas Supreme Court cases in which the special appearance hearings in the trial courts were nonevidentiary and the supreme court nonetheless recited that the proper standard of review required the appellate court to imply all fact findings supported by the evidence in favor of the trial court's ruling.  *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010); *BMC Software Belg., N.V.*, 83 S.W.3d at 795.

## B. The Limits of Personal Jurisdiction
## Under the Guarantees of Due Process

In addition to the long-arm statute, the exercise of in personam jurisdiction over a nonresident defendant must satisfy federal due process requirements. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945); *PHC-Minden L.P.*, 235 S.W.3d at 166; *Moki Mac River Expeditions*, 221 S.W.3d at 575. The exercise of personal jurisdiction over a nonresident defendant satisfies the due process requirements of the Fourteenth Amendment only when (a) the nonresident defendant has established minimum contacts with the forum state and (b) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S. Ct. 2174, 2183–85 (1985); *PHC-Minden, L.P.*, 235 S.W.3d at 166; *Moki Mac River Expeditions*, 221 S.W.3d at 575.

### 1. Due Process Minimum Contacts Analysis

The focus of a due process, minimum contacts analysis is on the nonresident defendant's activities and expectations. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790 (Tex. 2005); *Am. Type Culture Collection, Inc.*, 83 S.W.3d at 806. A nonresident defendant's contacts with a forum state can give rise to (a) general jurisdiction or (b) specific jurisdiction. *See PHC-Minden, L.P.*, 235 S.W.3d at 166; *Moki Mac River Expeditions*, 221 S.W.3d at 575–76.

### a. General Jurisdiction

General jurisdiction refers to personal jurisdiction over a nonresident defendant in a lawsuit in which the cause of action does not arise out of or relate to the nonresident defendant's contacts with the forum state. *See*, *e.g.*, *PHC-Minden, L.P.*, 235 S.W.3d at 168. General jurisdiction is present when the nonresident defendant's contacts in a forum state are continuous and systematic. *Id*. at 167–69. Usually, to be subject to general jurisdiction of the forum state, the nonresident defendant must be engaged in longstanding business there, such as marketing, shipping products, performing services, or maintaining one or more offices there. *Id*. at 168.

### b. Specific Jurisdiction

Specific jurisdiction refers to personal jurisdiction over a nonresident defendant in a lawsuit that arises out of or is related to the nonresident defendant's contacts with the forum state. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010); *Moki Mac River Expeditions*, 221 S.W.3d at 576. When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the nonresident defendant, the forum state, and the litigation. *Moki Mac River Expeditions*, 221 S.W.3d at 575–76; *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 226. For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the nonresident defendant's contacts with the forum state must be purposeful; and (2) the cause of action must arise from

or relate to those contacts. *See Burger King Corp.*, 471 U.S. at 473–76, 105 S. Ct. at 2182–84; *Spir Star AG*, 310 S.W.3d at 873; *Moki Mac River Expeditions*, 221 S.W.3d at 579; *BMC Software Belg., N.V.*, 83 S.W.3d at 796.

Purposeful contacts are key to a jurisdictional due process analysis. *See Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 784; *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 226–27. There are three parts to a purposeful availment inquiry: (1) only the nonresident defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; (2) the contacts relied on must be purposeful rather than random, fortuitous, or attenuated; and (3) the nonresident defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *See Moki Mac River Expeditions*, 221 S.W.3d at 575; *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 784–85.

Specific jurisdiction is established only when the nonresident defendant's alleged liability arises from or is related to activity conducted within the forum. *Moki Mac River Expeditions*, 221 S.W.3d at 576; *BMC Software Belg., N.V.*, 83 S.W.3d at 796. The "arises from or relates to" requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum state. *Moki Mac River Expeditions*, 221 S.W.3d at 579. In order for a nonresident defendant's contacts in a forum state to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Id.* at 585.

10

## 2. Traditional Notions of Fair Play and Substantial Justice

Finally, in addition to the requirement of minimum contacts with the forum state, the exercise of personal jurisdiction over a nonresident defendant must comport with traditional notions of fair play and substantial justice. *See Burger King Corp.*, 471 U.S. at 476, 105 S. Ct. at 2184; *BMC Software Belg., N.V.*, 83 S.W.3d at 795. These terms gain meaning when viewed in light of the minimum contacts a defendant has had with the forum; when a nonresident defendant has purposefully availed itself of the privilege of conducting business in a foreign jurisdiction, only in the very rare case will the exercise of jurisdiction over that defendant not comport with traditional notions of fair play and substantial justice. *See Spir Star AG*, 310 S.W.3d at 878; *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 231.

## V. JURISDICTIONAL ANALYSIS

In determining whether the record before us establishes personal jurisdiction, we examine individually each Appellee's contacts with Texas and each of Moncrief Oil's claims against each Appellee. *See, e.g., Kelly*, 301 S.W.3d at 659–60 (analyzing claim for violation of Texas Trust Act and claim for fraud separately for jurisdictional purposes); *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 785 (explaining that only the defendant's contacts with the forum count, not the unilateral activity of another party or third person); *see also Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006) (recognizing that specific jurisdiction is a claim-specific inquiry).

11

## A. Moncrief Oil's Jurisdictional Allegations

As to each Appellee, Moncrief Oil pleaded, "[Appellee] has done business in Texas (as defined in Texas Civil Practice & Remedies Code § 17.042). It is therefore subject to personal jurisdiction in this State." Moncrief Oil's live pleading then sets forth thirty-five paragraphs of factual statements, including allegations that during settlement negotiations in Fort Worth, Texas, relating to Moncrief Oil's federal lawsuit against Gazprom, Moncrief Oil shared "confidential information with Timothy Sutherland and Alexander Medvedev" (who were acting on behalf of Gazprom and Gazprom Export) based on representations by those individuals that they would keep the information confidential. Moncrief Oil alleged that the confidential information included "confidential details of Moncrief's joint venture with Occidental, in-depth market analysis of the North American midstream/pipeline market, and in-depth studies and assessments of existing and proposed re-gasification facilities located in North America and in the Gulf Coast area of the United States." Moncrief Oil further alleged that Gazprom scheduled a meeting with Occidental in California and threatened Occidental if it did not pressure Moncrief Oil to settle or end its federal litigation against Gazprom. And finally, Moncrief Oil alleged that Appellees used the confidential information obtained from Moncrief Oil to open their own LNG regasification facility in Houston, Texas, via an entity named GMT USA.

Based on these facts, Moncrief Oil pleaded causes of action for tortious interference with its Occidental joint venture, misappropriation of trade secrets, and

12

conspiracy to tortiously interfere and to misappropriate trade secrets[7] by Appellees.

Moncrief Oil also pleaded that Gazprom Marketing & Trading, Ltd. was the alter ego of or fused with GMT USA. Moncrief Oil claims that the trial court possesses general and specific jurisdiction over Gazprom and specific jurisdiction over Gazprom Export and Gazprom Marketing & Trading, Ltd.

## B. Time Line

The affidavits, deposition excerpts, and documentary evidence submitted to the trial court establish the following time line of Appellees' contacts with Moncrief Oil and with Texas. While the subject of the meetings and the conversations that occurred at the meetings are disputed, the fact that these contacts occurred is not disputed.

July 2004

> Moncrief Oil's CEO, Richard Moncrief, meets with the Chairman of Gazprom's Management Board, Alexey Miller,[8] in Moscow, Russia. The purpose of this meeting was to discuss a proposed joint venture between Moncrief Oil, Occidental, and Gazprom involving a regasification plant in Ingleside, Texas.

---

[7]... Appellees correctly point out that Moncrief Oil's conspiracy claims are based on the alleged torts of interference with the Occidental joint venture and misappropriation of trade secrets and that, accordingly, because no factually distinct basis exists for Moncrief Oil's conspiracy claims, they add nothing to our jurisdictional analysis. *See Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999) (holding plaintiff must establish personal jurisdiction over a defendant individually and not as part of a conspiracy). Accordingly, we do not further address Moncrief Oil's conspiracy claims in our jurisdictional analysis.

[8]... We use the spelling "Alexey" found in the Affidavit of Richard W. Moncrief. We note that at other places in the record the name is spelled "Alexi."

13

2004 through early 2005

Moncrief Oil's Jeff Miller and Andrey Konstantinovitch Krivorotov, Advisor to the Deputy Head of the Management Board of Gazprom, exchange over fifty communications (emails and phone calls). These communications were to and from Moncrief Oil's Fort Worth office.

September 2004

Moncrief Oil's Jeff Miller and Moncrief Oil's CFO, David Maconchy, meet Ivan Zolotov, special assistant to Alexey Miller, in Moscow, Russia. Moncrief Oil discloses confidential trade secret information to facilitate the joint venture between Moncrief Oil, Occidental, and Gazprom.

September 22, 2004

Richard Moncrief meets Gazprom's Alexander Ryazanov in Washington, D.C., to further discuss the joint venture. Moncrief Oil's trade secret information is again presented.

June 7, 2005

Moncrief Oil files a federal lawsuit against Gazprom and other defendants.

October and November 2005

Three meetings occur:

1. Houston, Texas: Richard Moncrief meets Alexander Medvedev,[9] and Gazprom Export's Timothy Sutherland. Moncrief disclosed updated confidential information concerning the Ingleside, Texas, regasification facility; the importation of LNG into the North American market; potential marketing partners; and the marketing of regasified LNG. Medvedev and Sutherland agreed to maintain the confidentiality of the information and to not use or disclose it to any third parties.
2. Boston, Massachusetts: Richard Moncrief meets with Medvedev and Sutherland. They continue discussions concerning the Ingleside

---

[9] ... The Gazprom Defendants have overlapping boards, officers, and directors. Alexander Medvedev served as Deputy Chairman of Gazprom, as Director General of Gazprom Export, and as a director of Gazprom Marketing & Trading, Ltd.

regasification facility. Moncrief claims that he again reminded Medvedev and Sutherland of the confidential nature of the information he was providing and that they both agreed to keep the information confidential and to not use or disclose it.

3. Fort Worth, Texas: Richard Moncrief, Miller, and Maconchy meet with Sutherland. Sutherland claims to be acting on behalf of Gazprom and Gazprom Export. They continue discussions relating to the Ingleside facility and Moncrief Oil's competitive assessment of the North American mid and downstream natural gas markets. Moncrief claims that he again emphasized the confidential nature of the information and that Sutherland again promised to keep the information confidential and to not use or disclose it.

February 2006

Sutherland and Boris Ivanov acting on behalf of Gazprom meet with Occidental's Todd Stevens and Casey Olson in California.

July 2006

GMT USA opens in Houston, Texas, for the regasification of LNG.

April 3, 2008

Moncrief Oil files the present lawsuit.

## C. OAO Gazprom

Gazprom is a Russian company with its principal place of business in Russia. Gazprom's special appearance alleges that it is not a citizen nor a resident of Texas; does not maintain a registered agent in Texas; does not maintain a place of business in Texas; has no employees, servants, or agents in Texas; did not commit any statutory violation, breach of contract, or tort, in whole or in part, in Texas; has had no continuous or systematic contacts with Texas; and did not commit any acts that would put it on notice that it was subject to the jurisdiction of a Texas court.

15

Gazprom's special appearance is verified by Krivorotov, Advisor to the Deputy Head of the Management Board of Gazprom.

## 1. General Jurisdiction

As set forth above, Gazprom's contacts with Texas include extensive phone calls and emails to Moncrief Oil's Texas office concerning a proposed, but never consummated, business deal and meetings in October and November 2005 in Fort Worth and Houston, Texas, at which Richard Moncrief disclosed confidential information to Gazprom. Negotiating by phone and email with a single Texas resident about the possibility of doing business in Texas cannot itself constitute doing business in Texas for purposes of general jurisdiction. *See*, *e.g.*, *PHC-Minden L..P.*, 235 S.W.3d at 170–71 (holding contacts with Texas would not support general jurisdiction).[10] Traveling to Texas twice in two months for meetings that did not result in a signed contract or venture with a Texas resident likewise is not the type of longstanding, continuous, and systematic contact required for the exercise of general jurisdiction over Gazprom to satisfy federal due process. *See PHC-Minden L..P.*, 235 S.W.3d at 170 (explaining that two trips to Texas by PHC-Minden L.P. employees were insufficient to support the exercise of general jurisdiction over PHC-

---

[10] Even entering into a contract with a Texas resident does not alone satisfy the federal due process minimum contacts requirement for purposes of general jurisdiction. *See*, *e.g.*, *Burger King Corp.*, 471 U.S. at 478, 105 S. Ct. at 2185 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

Minden L.P.). Thus, these three instances of contacts by Gazprom with Texas do not, as a matter of law, rise to the level of minimum contacts necessary to subject Gazprom to general jurisdiction in a Texas state court. *See id.* at 167–69 (quoting the holding in *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416–17, 104 S. Ct. 1868, 1873 (1984), that sending CEO to Texas for contract negotiation session, accepting checks drawn on Texas bank, purchasing products from Texas, and sending personnel to Texas for training did not constitute continuous, systematic contacts that would satisfy federal due process requirement). Thus, we hold that the trial court properly determined that it could not, consistently with federal due process guarantees, exercise general personal jurisdiction over Gazprom.

We overrule the portion of Moncrief Oil's second issue contending that general jurisdiction exists over Gazprom in Texas state courts.

## 2. Specific Jurisdiction

We next address whether the Texas long-arm statute authorizes Texas jurisdiction over Moncrief Oil's claims against Gazprom for tortious interference with the Occidental joint venture and for misappropriation of trade secrets, whether—focusing on the relationship between Gazprom, Texas, and the litigation—Gazprom's contacts with Texas were purposeful and whether Moncrief Oil's alleged causes of action arise from or relate to those contacts. *See Moki Mac River Expeditions*, 221 S.W.3d at 579; *BMC Software Belg., N.V.*, 83 S.W.3d at 796.

17

### a. Tortious Interference With Joint Venture

Concerning Moncrief Oil's tortious interference claim, the special appearance record conclusively establishes that any tortious interference with Moncrief Oil's Occidental joint venture that may have occurred happened in California. The meeting between Gazprom and Occidental's Todd Stevens at which Gazprom allegedly made threats that interfered with the business relationship existing between Occidental and Moncrief Oil occurred in California. Because the elements of this alleged tort purportedly occurred in California, not Texas, specific jurisdiction over this claim does not exist in Texas. *See BMC Software Belg., N.V.*, 83 S.W.3d at 796–97 (holding specific jurisdiction did not exist in Texas for fraud and negligent misrepresentation claims when based on conversations and negotiations that occurred outside of Texas).

Moncrief Oil nonetheless points out that Gazprom's tortious interference with its Occidental joint venture was "directed toward" Texas and claims that it suffered damages in Texas. The Texas Supreme Court in *Michiana Easy Livin' Country, Inc.* rejected the "directed-a-tort-at-Texas" specific jurisdiction analysis. 168 S.W.3d at 790–92; *see also Kelly*, 301 S.W.3d at 661 (reversing court of appeals for applying directed-a-tort-at-Texas analysis and explaining, "we rejected the concept of directed-a-tort jurisdiction in *Michiana.*"). The supreme court in *Michiana Easy Livin' Country, Inc.* noted that the directed-a-tort-at-Texas analysis shifted the focus from the relationship between the *defendant*, the forum, and the litigation to a focus on the

18

*plaintiff*, the forum, and the litigation. 168 S.W.3d at 790. The supreme court noted that this analysis also confused the roles of judges and juries by equating the jurisdictional inquiry with the underlying merits; that is, under the directed-a-tort-at-Texas analysis, a defendant may defeat personal jurisdiction by proving the merits—that no tort occurred. *Id.* The supreme court explained that "[b]usiness contacts are generally a matter of physical fact, while tort liability (especially misrepresentation cases) turns on what the parties thought, said, or intended. Far better that judges should limit their jurisdictional decisions to the former rather than involving themselves in trying the latter." *Id.* at 791. Thus, that Gazprom's alleged tortious interference with the Moncrief Oil-Occidental joint venture was "directed at" Texas–to the extent that Moncrief Oil is a Texas resident or because Moncrief Oil as a Texas resident alleges it suffered damages in Texas–is insufficient to confer specific jurisdiction on Texas courts over this claim. *See id.* at 789–90 (explaining that it is the extent of the defendant's conduct and connection with the forum that is the critical focus, not simply the residence of the plaintiff).[11]

---

[11] Moncrief Oil also cites *Retamco Operating, Inc.* for the proposition that the tort of tortious interference with the joint venture occurred at least partially in Texas because the resulting injury occurred in Texas. 278 S.W.3d at 340–41. But the *Retamco Operating, Inc.* facts are distinguishable from the facts here; in *Retamco Operating, Inc.*, the nonresident defendant purchased oil and gas interests in Texas. *Id.* at 339. The Texas Supreme Court noted that oil and gas interests are real property interests and explained that "[u]nlike personal property, [the nonresident's] real property will always be in Texas, which leaves no doubt of the continuing relationship that this ownership creates." *Id.* Here, Moncrief Oil's alleged injury occurred in Texas not because of Gazprom's connection to or ownership of Texas real property, but only because Moncrief Oil is a Texas resident.

19

The cases relied upon by Moncrief Oil in support of its directed-a-tort-at-Texas jurisdictional analysis were either decided before *Michiana Easy Livin' Country, Inc.* or are distinguishable on their facts. *See, e.g., Retamco Operating, Inc.*, 278 S.W.3d at 333; *see also Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376 (5th Cir. 2003); *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186 (5th Cir. 1984). Thus, we hold that the trial court properly granted Gazprom's special appearance concerning Moncrief Oil's tortious interference claim.

We overrule the portion of Moncrief Oil's second issue contending that the trial court possesses specific jurisdiction over Gazprom based on Moncrief Oil's tortious interference with a business relationship claim.

### b. Misappropriation of Trade Secrets

We next address whether specific jurisdiction exists over Gazprom concerning Moncrief Oil's misappropriation of trade secrets claim. The elements of misappropriation of trade secrets are (1) existence of a trade secret, (2) breach of a confidential relationship or improper discovery of a trade secret, (3) use of the trade secret, and (4) damages. *IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 467 (Tex. App.—Amarillo 2001, pet. denied).

Gazprom claims that the information that Richard Moncrief disclosed at the meetings was not confidential and did not constitute trade secrets. But neither the trial court nor this court is permitted to determine the merits of Moncrief Oil's claims in making a jurisdictional determination. *See Michiana Easy Livin' Country, Inc.*, 168

20

S.W.3d at 790–91. Moncrief Oil alleged in its petition and Richard Moncrief asserted in his affidavit that Moncrief Oil provided confidential trade secret information to Gazprom at various meetings with Gazprom, including the meetings in Houston and Fort Worth, Texas. These allegations and sworn assertions sufficiently allege that the commission of a part of the tort of misappropriation of trade secrets occurred in Texas to authorize personal jurisdiction under the Texas long-arm statute and to shift the burden to Gazprom to negate this basis of personal jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2) (providing that a nonresident does business in Texas when he commits a tort in whole or in part in Texas); *see also Pulmosan Safety Equip. Corp. v. Lamb*, 273 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (holding plaintiff was not required to prove he *actually* used a Pulmosan hood because that was a merits-based question; instead, allegation of use of a Pulmosan hood in Texas was sufficient to shift burden to defendant to negate jurisdiction).

Gazprom claims that it factually negated specific jurisdiction over Moncrief Oil's alleged misappropriation of trade secrets claim by proving that Moncrief Oil disclosed its alleged trade secret information to the U.S. Department of Energy and through Todd Stevens's testimony that a major oil company with the right connections could discover from public sources all of the information that Moncrief Oil claims constitutes trade secrets. These arguments by Gazprom are waiver arguments—that Moncrief Oil waived the allegedly secret nature of the information.

21

Waiver is an affirmative defense. Tex. R. Civ. P. 94 (stating waiver is an affirmative defense); *In re EPIC Holdings, Inc.*, 985 S.W.2d 41, 57 (Tex. 1998) (orig. proceeding) ("Waiver is an affirmative defense."). An affirmative defense does not tend to rebut factual propositions asserted by a plaintiff, but rather it seeks to establish an independent reason why the plaintiff should not recover. *Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex.), *cert. denied*, 502 U.S. 824 (1991). Here, Gazprom claims that even if the information disclosed to it by Moncrief Oil does constitute trade secret information, Moncrief Oil nonetheless waived the privileged nature of the information because it disclosed the information to the U.S. Department of Energy and because the right inquiries to the right public entities could allegedly result in the discovery of the same information.[12] Because these arguments by Gazprom—whether correct or not—assert its right to prevail on the merits of Moncrief Oil's misappropriation of trade secrets claim based on the affirmative defense of waiver, we are not to address them in our jurisdictional analysis. *See Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 790–91

---

[12] ... Stevens testified, in part:

Q. But you would expect that any – and I'll limit this not to people on the street, but any sophisticated gas company would be able to obtain any of the information that's in Exhibit No. 3 through their own efforts in the public domain. Would you agree with that?

. . . .

A. If they had the right resources, they could - - they could probably do it.

22

(recognizing fallacy of nonresident defendant's attempt to defeat jurisdiction on basis of merits of claim); *see also In re BP Prods. N. Am. Inc.*, 263 S.W.3d 106, 115–17 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding) (holding disclosure of reserve figure to SEC did not waive privilege).

Moncrief Oil's pleading and Richard Moncrief's affidavit and deposition testimony allege that Gazprom "used" the trade secret information (the third element of Moncrief Oil's misappropriation of trade secrets cause of action) it obtained in Texas by setting up GMT USA in Houston, Texas, an entity that Moncrief Oil alleges engages in the very business proposed by Moncrief Oil to Occidental and Gazprom via the Ingleside, Texas, regasification facility. Gazprom, however, points to excerpts from Richard Moncrief's deposition testimony as jurisdictional evidence factually negating this alleged basis for specific personal jurisdiction. Viewed in context, the testimony Gazprom points to does not negate Gazprom's alleged "use" of Moncrief Oil's trade secret information in Texas.[13] Thus, Gazprom has not, for

---

[13] ... Gazprom quotes Richard Moncrief's deposition testimony that he would be speculating as to how Gazprom used Moncrief Oil's trade secrets, but the entirety of his testimony on the issue was as follows:

Q. And so can you identify for us anything that Gazprom has done to use Moncrief's confidential trade secrets?

A. I can't be specific about it until we get a chance to examine their records.

Q. In paragraph 24, sir, that first sentence, it says, in 2007, after the Gazprom/Pace meeting with Occidental and after Defendant Gazprom Marketing & Trading USA, Inc. began operations using Moncrief's trade

23

jurisdictional purposes, factually negated either that Moncrief Oil disclosed trade secret information to Gazprom in Texas or that Gazprom used Moncrief Oil's trade secret information in Texas.

Having determined that the Texas long-arm statute authorizes the trial court's exercise of jurisdiction over Gazprom concerning Moncrief Oil's misappropriation of trade secrets claim and that Gazprom has not factually negated Moncrief Oil's allegations of specific jurisdiction concerning this claim, we next address whether this exercise of jurisdiction by the trial court would be consistent with federal constitutional due-process guarantees. *See Moki Mac River Expeditions*, 221 S.W.3d at 574. As previously stated, the focus of a due process, minimum contacts analysis is on the nonresident defendant's activities and expectations. *Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 790. There are three parts to a purposeful

secrets - - I'm going to stop the sentence there. It continues, sir.

Now, my question for you is, how did Defendant Gazprom Marketing and Trading USA, Inc. begin operations using Moncrief's trade secrets?

A. We can't document that until we've had a chance to look at the records.

Q. Can you –

A. It's our belief.

Q. Can you identify for us, sir, anything that Gazprom Marketing and Trading USA, Inc. did to use Moncrief's confidential trade secrets, sir?

A. I would be speculating right now.

24

availment inquiry: (1) only the nonresident defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; (2) the contacts relied on must be purposeful rather than random, fortuitous, or attenuated; and (3) the nonresident defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *See Moki Mac River Expeditions*, 221 S.W.3d at 575; *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 784–85.

Focusing on the relationship between Gazprom, Texas, and the litigation, we examine whether the contacts relied upon by Moncrief Oil are attributable to Gazprom, whether the contacts were purposeful, and whether Moncrief Oil's claim for misappropriation of trade secrets arises from or relates to those contacts. *See Moki Mac River Expeditions*, 221 S.W.3d at 579; *BMC Software Belg., N.V.*, 83 S.W.3d at 796. As set forth above, the contacts Moncrief Oil alleges concerning its misappropriation of trade secrets claim are Gazprom's emails and phone calls to Moncrief Oil's Fort Worth, Texas, office and two trips by Gazprom to Texas for meetings with Moncrief Oil. Moncrief Oil alleges that confidential trade secrets were provided to Gazprom during the emails, phone calls,[14] and at the Texas meetings

---

[14] Moncrief Oil's Jeff Miller testified by affidavit:

I spoke almost daily with Gazprom's Krivorotov over the telephone from July 2004 through January 2005. I estimate that I had at least 50 telephone conversations with Mr. Krivorotov during that time period. . . . I discussed in detail Moncrief's proposal to Gazprom concerning access to Texas-based LNG facilities, participation in the United States gas and power marketing, and a competitive assessment of the North American mid and downstream natural gas markets. From the outset,

based on Gazprom's continued promise to keep the information confidential and to not use or disclose it. No dispute exists that these contacts are attributable to Gazprom or that Moncrief Oil's claim for misappropriation of trade secrets arises from or relates to these alleged contacts. Thus, we address the second prong of the due process purposeful availment inquiry, that is, whether these contacts by Gazprom with Texas were purposeful rather than random, fortuitous, or attenuated. *See Moki Mac River Expeditions*, 221 S.W.3d at 574.

Gazprom contends that its trips to Texas were for the purpose of discussing settlement of Moncrief Oil's federal lawsuit and thus were merely fortuitous and cannot as a matter of law be considered purposeful contacts with Texas.[15] Gazprom has not cited, and we have not located, any Texas cases holding that business meetings conducted by a nonresident defendant while in Texas for a settlement conference or a mediation automatically cannot constitute a contact with Texas.

_____

. . . I reiterated that the information disclosed during our discussions was confidential and should not be used or disclosed to any third party without Moncrief's permission.

[15] ... Gazprom cites several cases in support of this argument. *See CEM Corp. v. Pers. Chemistry, AB*, 55 F. App'x 621, 625 (4th Cir. 2003); *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 796 (6th Cir. 1996); *Digi-tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 524 (8th Cir. 1996); *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 536 F. Supp. 2d 181, 191 (D.R.I. 2008), *vacated in part on other grounds*, 567 F.3d 8 (1st Cir. 2009); *Conwed Corp. v. Nortene, S.A.*, 404 F. Supp. 497, 504–05, 507 n.6 (D. Minn. 1975). Unlike Moncrief Oil's allegations here, however, the plaintiffs in the above cited cases did not allege that any portion of a tort cause of action occurred while the defendant was in Texas for settlement negotiations. Consequently, these cases are factually distinguishable.

Logic dictates that a nonresident coming to Texas for a settlement conference would piggyback other business or negotiations in Texas to that trip. We cannot agree that all conduct of a nonresident defendant while in Texas for a settlement conference is somehow insulated and may not be considered a contact with Texas for purposes of a jurisdictional analysis.

Gazprom also argues that the alleged trade secret information disclosed by Moncrief Oil in Texas had been previously disclosed to Gazprom in Moscow and in Washington, D.C., and was only redisclosed unilaterally by Moncrief Oil in the Texas settlement conferences. Consequently, Gazprom argues that even if somehow a tort claim for misappropriation of trade secrets exists, no element of it initially occurred in Texas. We have located no authority for the proposition that in analyzing specific jurisdiction of a forum over a nonresident defendant for misappropriation of trade secrets, only the forum of the initial disclosure of trade secrets counts as a contact. The parties cite cases in which the initial disclosure of trade secret information did occur in the forum state, but these cases did not involve an allegation like Moncrief Oil's allegation here that the disclosure was ongoing "during the course of their ongoing discussions." *See*, *e.g.*, *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3rd Cir. 2004); *S & D Trading Acad., LLC v. AAFIS, Inc.*, 494 F. Supp. 2d 558, 567 (S.D. Tex. 2007); *Delta Brands, Inc. v. Rautaruukki Steel*, 118 S.W.3d 506, 511–12 (Tex. App.—Dallas 2003, pet. denied). Thus, the fact that Moncrief Oil's alleged disclosure of confidential trade secret information to Gazprom was repeated,

was updated, and had occurred at different meetings in different locations does not defeat our consideration of the Texas disclosures in our minimum contacts analysis.

Nonetheless, Gazprom is correct that its contacts with Texas must be purposeful and not merely random or fortuitous. *See Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 784; *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 226–27. Although we have rejected Gazprom's claims that its trips to Texas were fortuitous as a matter of law simply because settlement negotiations occurred in Texas and that its phone calls and emails to Texas were fortuitous as a matter of law simply because alleged trade secret information was repeated in Texas rather than initially disclosed in Texas, our rejection of these arguments that would render Gazprom's contacts fortuitous does not mean that there is no evidence or insufficient evidence that Gazprom's contacts were purposeful.

Gazprom argues that its contacts with Moncrief Oil were not purposeful because its communications with a single Texas resident that did not result in a venture, a contract, or any kind of business deal cannot constitute a purposeful contact with Texas. That is, Gazprom argues that negotiating to possibly do business with a single Texas resident and deciding not to do business with that resident cannot constitute doing business. Moncrief Oil counters that many courts have premised specific jurisdiction on a nonresident's contacts via phone and email when those contacts are combined with visits to the forum and when the plaintiff's claims arose from or related to those contacts. Moncrief Oil relies on *Glencoe*

28

*Capital Partners II, LP v. Gernsbacher*, 269 S.W.3d 157, 165 (Tex. App.—Fort Worth 2008, no pet.), *Fish v. Tandy Corp.*, 948 S.W.2d 886, 895 (Tex. App.—Fort Worth 1997, writ denied), and *Citrin Holdings, LLC v. Minnis*, 305 S.W.3d 269, 282–83 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

The Texas Supreme Court in *Michiana Easy Livin' Country, Inc.* limited the viability of phone calls to a forum as constituting purposeful contacts with that forum. 168 S.W.3d at 791. The supreme court explained in *Michiana Easy Livin' Country, Inc.* that "changes in technology have made reliance on phone calls obsolete as proof of purposeful availment." *Id*. While Moncrief Oil is correct that courts have nonetheless continued in some circumstances to consider phone calls in a jurisdictional minimum contacts analysis, the facts of the cases cited by Moncrief Oil are distinguishable from the facts here for two main reasons. First, in *Glencoe*, *Fish*, and *Citrin Holdings*, the trial courts *denied* the nonresident defendants' special appearances. Because no findings of fact or conclusions of law were filed in *Glencoe*, *Fish*, or *Citrin Holdings*, the appellate courts in those cases implied all findings necessary to support the trial courts' *denial* of each nonresident's special appearance if such findings were supported by the record. But here, the trial court *granted* Appellees' special appearances; because no findings of fact or conclusions of law were filed, we must imply all fact findings that are supported by the record in favor of Appellees. Second, in *Fish* and *Citrin Holdings*, the nonresident defendants executed contracts with Texas residents, and in *Glencoe*, the nonresident

29

defendants participated in telephonic board meetings with Texas residents concerning a Texas-based corporation. *See Citrin Holdings*, 305 S.W.3d at 281 ("It is reasonable to subject a nonresident defendant to personal jurisdiction in Texas in connection with litigation arising from a contract specifically designed to benefit from the skills of a Texas resident who performs contractual obligations in Texas."); *Glencoe*, 269 S.W.3d at 164–67 (holding that nonresident defendants' telephonic participation over two-year span along with Texas resident board members in board meetings of corporation located in Texas constituted purposeful availment); *Fish*, 948 S.W.2d at 894–95 ("He [Fish] negotiated and contracted with Tandy, a Texas Corporation based in Fort Worth, for distributorships in Russia."). Here, it is undisputed that Gazprom did not enter into a contract with Moncrief Oil as did the nonresident defendants in *Fish* and in *Citrin Holdings*, nor did Gazprom participate telephonically in board meetings of a corporation based in Texas as did the nonresident defendants in *Glencoe*. Thus, in *Glencoe*, *Fish*, and *Citron Holdings*, the trial courts' denials of the special appearances and the appellate courts' affirmances of those denials did not rely solely on phone calls and emails to find purposeful availment; instead, purposeful availment included contacts in addition to phone calls–entering into a contract or participating in a board meeting of a Texas-based corporation.

Moncrief Oil contends in its reply brief that the facts of this case are strikingly similar to the facts in *Quantum Catalitics, LLC v. Vantage Point Venture Partners*,

30

No. H-07-2619, 2008 WL 5245298, at *4 (S.D. Tex. Dec. 15, 2008). The plaintiff in *Quantum Catalitics* alleged misappropriation of trade secrets by a nonresident defendant. The plaintiff pleaded that the nonresident defendant had "feigned an interest in investing in TSI" but "actually contacted TSI 'for the purpose of wrongfully acquiring Plaintiffs' Trade Secrets.'" *Id.* at *4. In holding that it possessed specific jurisdiction over the nonresident defendant, the trial court noted that the nonresident defendant "essentially concedes as much by not challenging personal jurisdiction with regard to the state law claims," which included the misappropriation of trade secrets claim. *Id.* The trial court noted that the nonresident defendant's request for summary judgment on the state law claims was "an implicit admission of the court's jurisdictional authority" and "also a waiver of Defendant's due-process objection to the court's assertion of personal jurisdiction." *Id.* at *4 n.35. Because the nonresident defendant in *Quantum Catalitics* implicitly admitted that the trial court possessed jurisdiction over it for purposes of the misappropriation of trade secrets claim and also waived any due process objection to the trial court's assertion of personal jurisdiction over it, that case is distinguishable from the present case in which Appellees have not made such an admission or waiver.

Moncrief Oil points to the two meetings Gazprom attended in Texas as constituting contacts in addition to Gazprom's telephone and email contacts with Texas. The affidavits, exhibits, and deposition excerpts attached to the special appearances and responses filed with the trial court contain conflicting statements

31

on whether the purpose of Gazprom's trips to Texas was primarily to discuss settlement of the federal lawsuit or was also for the dual purpose of furthering a scheme to obtain trade secrets from Moncrief Oil to utilize in the opening of GMT USA. If Gazprom traveled to Texas primarily for the purpose of settlement negotiations in the federal lawsuit, then given Gazprom's activities and expectations, the location of Texas as the place for the meeting was simply random or fortuitous. *See Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 785. The affidavits, exhibits, and deposition excerpts contain facts legally and factually supporting the trial court's implied finding that the location of these two meetings in Texas was merely random or fortuitous, not purposeful. *See Asshauer v. Farallon Capital Partners, L.P.,* 319 S.W.3d 1, 16 (Tex. App.—Dallas 2008, no pet.). These facts include that other similar meetings were held outside of Texas, that a federal lawsuit against Gazprom was pending in Texas, and that Moncrief Oil could and, according to Moncrief Oil, did disclose, update, or further explain trade secret information to Gazprom in other locations, such as Boston, Massachusetts. Deferring as we must to the trial court's implied findings of fact, the affidavits, exhibits, and deposition excerpts before us contain legally and factually sufficient statements of fact to support the trial court's implied findings that the two meetings Gazprom attended in Texas—even when combined with the phone conversations and emails between Gazprom and Moncrief Oil—did not constitute purposeful availment. Moreover, deferring to this implied

32

finding, we cannot say that the facts opposing it are so overwhelming as to render it clearly wrong and manifestly unjust. *See id.*

Gazprom also argues that it did not seek any benefit, advantage, or profit by twice meeting with Moncrief Oil in Texas. Gazprom argues that it did not enjoy any benefit by "merely exchanging communications concerning a *proposed* Texas-based joint venture that Gazprom *refused* to join." Because we have upheld the trial court's implied finding of fact that Gazprom's contacts with Texas were not purposeful as required under the second prong of the purposeful availment analysis, we need not reach this argument by Gazprom, challenging the third prong of the purposeful availment analysis.

We overrule the remaining portion of Moncrief Oil's second issue contending that the trial court possesses specific jurisdiction over Gazprom based on Moncrief Oil's misappropriation of trade secrets claim.

### D. Gazprom Export, LLC

Gazprom Export is a subsidiary of Gazprom with the exclusive right to export Russian natural gas outside the Russian Federation. It is a Russian company with its principal place of business in Russia. Moncrief Oil pleaded the same causes of action, specific jurisdiction facts, and contacts with Texas concerning Gazprom Export that it asserted concerning Gazprom. Gazprom Export admits that Timothy Sutherland was acting on its behalf at the Texas meetings where Moncrief Oil alleges that it disclosed trade secrets. Thus, our specific jurisdiction analysis

33

concerning Gazprom is the same for Gazprom Export, and we adopt it and incorporate it here. For the same reasons that we held the trial court did not possess specific jurisdiction over Gazprom for purposes of Moncrief Oil's tortious interference claim and Moncrief Oil's misappropriation of trade secrets claim, we likewise hold the same for Gazprom Export. We overrule Moncrief Oil's first issue.

### E. Gazprom Marketing & Trading, Ltd.

Gazprom Marketing & Trading, Ltd. is a United Kingdom corporation that markets natural gas for the Gazprom group of companies. While generally only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person,[16] Moncrief Oil alleges that Gazprom Marketing & Trading, Ltd. is the alter ego of or is fused with GMT USA, a Delaware corporation having its principal place of business in Houston, Texas. Moncrief Oil contends that, therefore, GMT USA's business in Houston, Texas, and its contacts with Texas establish general jurisdiction over Gazprom Marketing & Trading, Ltd.

Texas law presumes that two separate corporations are indeed distinct entities. *BMC Software Belg., N.V.*, 83 S.W.3d at 798. For a parent company and its subsidiary to be fused for jurisdictional purposes, the plaintiffs must prove the parent company controls the internal business operations and affairs of the subsidiary. *PHC-Minden L..P.*, 235 S.W.3d at 175. The degree of control the parent company exercises must be greater than that normally associated with common

---

[16] *... Moki Mac River Expeditions*, 221 S.W.3d at 575.

34

ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice. *Id.*

Moncrief Oil bore the burden of proving its allegation that Gazprom Marketing & Trading, Ltd. is the alter ego of or is fused with GMT USA. *See, e.g., Capital Tech. Info. Servs., Inc. v. Arias & Arias Consultores*, 270 S.W.3d 741, 749 (Tex. App.—Dallas 2008, pet. denied) ("The party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities must prove this allegation."); *Ramirez v. Hariri*, 165 S.W.3d 912, 915 (Tex. App.—Dallas 2005, no pet.) (same). To meet this burden, Moncrief Oil points to the deposition testimony of John Hattenberger, the president of GMT USA. Hattenberger testified that GMT USA is funded solely by Gazprom Marketing & Trading, Ltd.; that Gazprom Marketing & Trading, Ltd. pays all salaries, business expenses, and overhead for GMT USA; and that GMT USA is essentially an "asset-less" company comprised of some furniture, computers, and cash loaned to it by Gazprom Marketing & Trading, Ltd. Gazprom Marketing & Trading, Ltd. points out that Hattenberger also testified that Gazprom Marketing & Trading, Ltd. did not exercise day-to-day control over the operations of GMT USA and that Keith Martin of GMT USA testified that GMT USA is an independent entity. Gazprom Marketing & Trading, Ltd. also argues that to the extent it did provide financial aid to GMT USA, it did so only during the start-up

35

operations of GMT USA. Gazprom Marketing & Trading, Ltd. alleges that GMT USA is now operating and generating its own revenues.

In determining whether Hattenberger's deposition testimony pointed to by Moncrief Oil satisfied its burden of rebutting the presumption that Gazprom Marketing & Trading, Ltd. and GMT USA are separate entities, we look to whether they observed corporate formalities. *See PHC-Minden L.P.*, 235 S.W.3d at 175. That is, we consider whether GMT USA's books and Gazprom Marketing & Trading Ltd.'s books are kept separate and whether transactions between the two are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations. *See PHC-Minden L.P.*, 235 S.W.3d at 172 (quoting and discussing the Supreme Court case of *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335, 45 S. Ct. 250, 251 (1925), and its holding that, although the nonresident defendant had dominated its subsidiary, immediately and completely, and had exerted control commercially and financially over the subsidiary, because the books of each corporation were maintained separately, "the corporate separation, though perhaps merely formal, was real"). So long as the two corporations maintain a degree of corporate separation that is more than superficial and the policy-making authority held and exercised by the parent is no more than that appropriate for a sole shareholder of a corporation, this exercise of control is not enough to warrant jurisdiction over the nonresident corporation through the resident corporation. *See PHC-Minden L.P.*, 235 S.W.3d at 172 (discussing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983)). A subsidiary corporation

36

will not be regarded as the alter ego of its parent merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders. *Id.* at 175 (quoting *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 573 (Tex. 1975)); *cf. Capital Tech. Info. Servs., Inc.*, 270 S.W.3d at 754–55 (listing five disregard-of-corporate-formalities type facts that rendered entities fused for jurisdictional purposes).

The record before us contains no evidence of the corporate formalities existing between Gazprom Marketing & Trading, Ltd. and GMT USA. The facts pointed to by Moncrief Oil–that GMT USA was initially funded solely by Gazprom Marketing & Trading, Ltd.; that Gazprom Marketing & Trading, Ltd. paid all salaries, business expenses, and overhead for GMT USA; and that GMT USA was essentially an "asset-less" company comprised of some furniture, computers, and cash loaned to it by Gazprom Marketing & Trading, Ltd.–do not necessarily mean that these two entities have disregarded corporate formalities existing between two separate entities. *See PHC-Minden L.P.*, 235 S.W.3d at 172 (discussing the importance of a complete disregard of corporate formalities in the determination of whether two entities are fused for jurisdictional purposes); *accord Ramirez*, 165 S.W.3d at 916–17 (holding that inadequate capitalization of corporation is not sufficient, in and of itself, to justify piercing the corporate veil and asserting personal jurisdiction over shareholders). In light of the lack of this type of evidence in the record, we hold that the trial court did not err by refusing to impute the contacts of GMT USA to Gazprom Marketing & Trading, Ltd.

37

We overrule Moncrief Oil's fourth issue.

## VI. REFUSAL TO COMPEL MEDVEDEV'S AND IVANOV'S DEPOSITIONS

Moncrief Oil claims, alternatively, in its fifth issue that the trial court abused its discretion by denying Moncrief Oil's motion to compel the depositions of Alexander Medvedev and Boris Ivanov. Appellees contend that Medvedev's and Ivanov's depositions are unnecessary because Moncrief Oil has had ample time to conduct jurisdictional discovery and has deposed six persons—including every individual making a special appearance affidavit for Appellees and a representative of each Appellee. Appellees point out that the record before this court is over 1,700 pages and argue that Moncrief Oil has failed to demonstrate that any additional testimony from these two men would be material to the jurisdictional issue before the court.

We review a trial court's decision to deny jurisdictional discovery under an abuse of discretion standard. *See Barron v. Vanier*, 190 S.W.3d 841, 847 (Tex. App.—Fort Worth 2006, no pet.); *see also Lamar v. Poncon*, 305 S.W.3d 130, 139 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). In determining whether the denial of jurisdictional discovery constituted an abuse of discretion, we consider as nonexclusive factors the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the discovery has exercised due diligence to obtain it. *Barron*, 190 S.W.3d at 847.

Moncrief Oil alleges that Medvedev's and Ivanov's depositions are material. Moncrief Oil contends that Medvedev initiated the Texas meetings with Moncrief Oil and "lulled Moncrief [Oil] into the false assurance that it was safe [for Moncrief Oil]

38

to share the information [with him]." Moncrief Oil's motion to compel these depositions alleged that Medvedev would provide testimony that Ivanov and Sutherland were acting on behalf of Gazprom in the California meeting and that Sutherland was acting on behalf of Gazprom at the meeting in Fort Worth. Moncrief Oil's motion alleged that Ivanov would provide testimony regarding his meeting with Occidental, "including the threat he made to Occidental and his proposal to eliminate Moncrief Oil from its joint venture with Occidental." Moncrief Oil alleges in its appellate brief that Ivanov was "at the center of the events in California that flowed from the tortious acts in Texas, the combination of which ultimately culminated in the destruction of Moncrief Oil's Texas-based joint venture with Occidental."

But Appellees point out that the jurisdictional evidence before the trial court already establishes that Medvedev attended the Texas meetings, that he attended on behalf of Gazprom and Gazprom Export, and that Ivanov attended the California meeting at the direction of Medvedev and on behalf of Gazprom. Appellees likewise point out that Moncrief Oil deposed other individuals present at these meetings– including Sutherland, Stevens, and Olson–and that Richard Moncrief attended the Texas meetings.

We hold that the trial court did not abuse its discretion by refusing to compel Medvedev's and Ivanov's depositions. Moncrief Oil does not allege or contend that the depositions of these two men would lead to the discovery of additional contacts with Texas. Instead, as set forth above, Moncrief Oil contends that the depositions are material because they would show the intentional, tortious nature of Appellees'

39

Texas contacts. Moncrief Oil's contentions in this regard are fully set forth in the record before us, and the trial court could reasonably have concluded that Medvedev's and Ivanov's testimony on these issues—for jurisdictional purposes—would simply be cumulative. *See*, *e.g.*, *BMC Software Belg., N.V.*, 83 S.W.3d at 800–01 (holding trial court did not abuse its discretion by denying motion for continuance to permit more discovery before special appearance hearing); *In re Weir*, 166 S.W.3d 861, 864 (Tex. App.—Beaumont 2005, orig. proceeding) (explaining that trial court possesses discretion to limit scope of discovery to protect against cumulative or duplicative discovery).

We therefore overrule Moncrief Oil's fifth issue.

## VII. CONCLUSION

Having overruled Moncrief Oil's four issues and having determined that we need not address Moncrief Oil's issue challenging the special appearance granted for OAO Gazprombank, we affirm the trial court's special appearance rulings.


SUE WALKER
JUSTICE

PANEL: GARDNER and WALKER, JJ.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

DELIVERED: November 24, 2010

40