

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00173-CV

---

REBECCA GEORGE                                                    APPELLANT

V.

ADAM M. DEARDORFF AND LANA                                       APPELLEES
WIRSIG

----------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

Appellant Rebecca George appeals from the trial court's dismissal of her claims against Appellees Adam M. Deardorff and Lana Wirsig on jurisdictional grounds.  In one issue, George argues that the trial court erred by sustaining Deardorff's and Wirsig's special appearances.  Because we hold that the trial court did not err by sustaining the special appearances, we affirm the trial court's order dismissing George's claims against them.

## Background

George filed suit against Deardorff, Wirsig, and Harlan Hall, a party not involved in this appeal. Hall is a resident of Texas, Deardorff is a resident of Pennsylvania, and Wirsig is a resident of Missouri. In her petition, George asserted claims for, among other things, libel, slander, defamation, civil conspiracy, intentional infliction of emotional distress, interference with known business relations, and negligence.

George asserted the following facts in her petition. In order to assist his daughter Dana in achieving the "High Point in the Nation" award from the American Paint Horse Association (APHA), Hall began a campaign to sabotage Maggie Griffin, one of his daughter's major competitors, and to discredit George, who trained Griffin and her horse. As part of this campaign, Hall filed suit against George; Griffin; Griffin's mother; Wirsig; and Wirsig's mother in Michigan state court for battery, assault, negligence, intentional infliction of emotional distress, and civil conspiracy. Wirsig was at that time one of George's clients.

Early in the Michigan lawsuit, Wirsig provided Hall with a written statement asserting that George and Griffin had instructed her to "cover" Dana at a competition (that is, to position her horse between Dana's horse and the judges to obstruct the judges' view of Dana). Hall dismissed Wirsig and her mother from the lawsuit, and Wirsig ceased all communication with George.

Hall produced Deardorff for a deposition in the Michigan suit, and in Deardorff's deposition, he stated that at the same competition, George behaved

2

in a manner designed to harass and intimidate Dana and other competitors. During this time, Deardorff and Hall were engaged in negotiations for Hall to hire Deardorff as the Hall family's horse trainer in Texas.

The trial court in the Michigan suit granted George and the Griffins' motion for summary judgment on Hall's claims. In addition to filing his lawsuit, Hall lodged two complaints with the APHA, causing that organization to revoke George's status as an official APHA judge and to suspend her from APHA competitions for six months. This suspension caused her to lose more than half of her clients.

Deardorff and Wirsig both filed special appearances asserting that the trial court lacked personal jurisdiction over them. In response, George alleged that they both had made false statements that were provided to APHA, whose headquarters is in Fort Worth. After a hearing, the trial court sustained the special appearances and dismissed George's claims against Deardorff and Wirsig.

### Standard of Review

Whether a trial court has personal jurisdiction over a defendant is a question of law that we review de novo.[1] The trial court frequently must resolve questions of fact before deciding the jurisdiction question, however, and we may

---

[1]*BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

review a trial court's findings of fact for legal and factual sufficiency.[2]  Although we do not review the trial court's legal conclusions for factual sufficiency, we may review the trial court's conclusions drawn from the facts to determine their correctness.[3]  If we determine that a conclusion of law is erroneous but that the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal.[4]

When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied.[5]  But when the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency.[6]

**Special Appearances**

Texas courts may exercise personal jurisdiction over nonresident defendants in accordance with the Texas long-arm statute.[7]  The plaintiff has the

---

[2]*Id.*

[3]*Id.*

[4]*Id.*

[5]*Id.* at 795.

[6]*Id.*; *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 332 S.W.3d 1, 7 (Tex. App.—Fort Worth 2010, pet. filed).

[7]Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–.045 (West 2008); *BMC Software*, 83 S.W.3d at 795.

initial burden to plead sufficient allegations to confer jurisdiction,[8] and, thus with a nonresident defendant, the plaintiff has the burden of pleading sufficient allegations to bring the defendant within the reach of the Texas long-arm statute.[9]

A plaintiff may meet this minimal pleading requirement by alleging that the nonresident defendant is doing business in Texas.[10] Once the plaintiff has met this burden, the nonresident defendant has the burden of negating all bases of jurisdiction alleged in the plaintiff's petition.[11] Because the plaintiff defines the scope and nature of the lawsuit, the defendant's burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading.[12] Thus, if the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute, the defendant need only prove that he or she does not live in Texas to meet this burden.[13]

The long-arm statute extends Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit."[14] Personal

[8]*Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *Moncrief*, 332 S.W.3d at 7.

[9]*BMC Software*, 83 S.W.3d at 793.

[10]*Moncrief*, 332 S.W.3d at 7.

[11]*Id.*

[12]*Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).

[13]*Id.* at 658–59.

[14]*BMC Software*, 83 S.W.3d at 795.

jurisdiction meets constitutional due process requirements when two conditions are met: "(1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice."[15]

A nonresident defendant's contacts with a state can give rise to either general or specific jurisdiction.[16] General jurisdiction exists when a defendant's contacts are continuous and systematic, in which case the forum state may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state.[17] Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum.[18]

To have minimum contacts for purposes of specific jurisdiction, a nonresident defendant must by some act have purposefully availed itself of the privileges of conducting activities within Texas.[19] Only the defendant's contacts with the state count: a defendant should not be haled into a jurisdiction solely as

---

[15]*Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)).

[16]*Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575–76 (Tex. 2007).

[17]*CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996).

[18]*Id.*; *Moncrief*, 332 S.W.3d at 9.

[19]*See Moki Mac*, 221 S.W.3d at 576; *see also Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784–85 (Tex. 2005).

a result of the "unilateral activity of another party or a third person."[20]  The acts relied on to show minimum contacts must be purposeful rather "random, isolated, or fortuitous."[21]  Furthermore, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction.[22]

One way a nonresident defendant establishes minimum contacts is by doing business in the state.[23]  For purposes of Texas's long-arm statute, a nonresident does business in Texas if the nonresident commits a tort "in whole or in part" in the state.[24]  An allegation that the nonresident committed a tort in Texas, however, while satisfying the long-arm statute, does not necessarily satisfy due process requirements.[25]

**Analysis**

In her sole issue, George argues that the trial court erred by sustaining Deardorff's and Wirsig's special appearances because the undisputed facts and legal precedence clearly show that Texas courts have jurisdiction over Deardorff and Wirsig.  George did not plead any facts in her petition to show general

---

[20]*Michiana*, 168 S.W.3d at 785.

[21]*Id.*

[22]*Id.*

[23]*IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 596 (Tex. 2007).

[24]Tex. Civ. Prac. & Rem. Code Ann. § 17.042.

[25]*Michiana*, 168 S.W.3d at 788.

jurisdiction and did not make any assertion in her response to Deardorff's and Wirsig's special appearances that the trial court had general jurisdiction over Deardorff and Wirsig. In fact, she specifically stated that she was "not alleging general jurisdiction applies here." Accordingly, we focus our analysis on whether the facts showed that the trial court had specific jurisdiction.

We first examine George's petition to see if she alleged facts giving rise to jurisdiction. George alleged that Deardorff was a resident of Pennsylvania and that Wirsig was a resident of Missouri. She did not allege in her petition that Wirsig or Deardorff had done business in Texas, nor did she allege any other jurisdictional facts. Although she asserted that Wirsig's and Deardorff's statements were provided to APHA, she asserted that Hall submitted them, not Wirsig or Deardorff.[26] She also asserted that Deardorff had engaged in negotiations with Hall regarding the possibility of Hall hiring Deardorff to become the Hall family's horse trainer in Texas. But she did not allege where these negotiations occurred or allege any other facts about these negotiations. None of these alleged facts show that either Deardorff or Wirsig had any actual contact with Texas. Based on these pleadings, George did not meet her burden to allege facts sufficient to give the trial court personal jurisdiction over Deardorff and Wirsig.

---

[26] *See id.* at 785 (stating that a defendant should not be haled into a jurisdiction based solely on the unilateral activity of a third party).

Because George failed to plead jurisdictional facts, Deardorff and Wirsig could meet their burden to negate jurisdiction by proving that they were nonresidents.[27] Deardorff and Wirsig both submitted affidavits to the trial court in which they swore that they were not residents of Texas. George never disputed that they were not Texas residents, and in fact she acknowledged that they were nonresidents in her pleadings. Because Deardorff and Wirsig met their burden to negate jurisdiction, George had the burden to show that the trial court had jurisdiction of Deardorff and Wirsig.[28]

George filed a response to the special appearances in which, in contradiction to her pleadings, she alleged that Wirsig and Deardorff furnished defamatory statements to the APHA, which has its headquarters in Texas, thereby committing a tort in this state. But then, in her affidavit attached to the response, she again alleged that it was Hall who had given the statements to the APHA. George did not amend her pleadings, and thus at the time the trial court entered its order, her live pleadings alleged that it was Hall who provided Deardorff's and Wirsig's statement to the APHA, and she affirmed this assertion in her affidavit challenging the special appearances.

To this response, Wirsig and Deardorff filed a joint reply. Wirsig attached an affidavit in which she stated that she had signed an affidavit in accordance

---

[27] *See Kelly*, 301 S.W.3d at 658–59.

[28] *See Assurances Generales Banque Nationale v. Dhalla*, 282 S.W.3d 688, 695 (Tex. App.—Dallas 2009, no pet.)

9

with her settlement with Hall of the Michigan lawsuit. She stated that at the time she signed the affidavit, she was not aware of any APHA complaints relating to the Michigan lawsuit, that she did not give the affidavit to the APHA, and that if it was given to the APHA, it was done without her knowledge. Deardorff likewise signed an affidavit in which he stated that he signed an affidavit in connection with the Michigan lawsuit, that he was unaware of the APHA complaints relating to the Michigan lawsuit, that he did not give his affidavit to the APHA, and that if the affidavit had been given to that organization, it was done without his knowledge.

George failed to assert any grounds on which the trial court could determine it had personal jurisdiction over Deardorff and Wirsig. Furthermore, even if the trial court considered her one statement in her response that Appellees had furnished their statements to the APHA, this allegation is not sufficient to show jurisdiction. This act, if true, was too random or isolated to constitute purposeful availment and does not show that Deardorff or Wirsig sought some benefit, advantage, or profit by availing themselves of Texas.[29] Similarly, George's allegation that Deardorff engaged in employment negotiations with Hall do not show minimum contacts; she did not allege whether these talks occurred in Texas or were of a nature to show purposeful availment.

---

[29] *See Michiana*, 168 S.W.3d at 788 (stating that allegations that a tort was committed in Texas satisfy the long-arm statute but not necessarily the U.S. Constitution).

George argues that the fact that it was Hall who provided the statement to APHA has no relevance here because "that issue is applicable under the purposeful availment analysis, not the long-arm analysis." We do not understand this argument. The "purposeful availment" analysis applies in determining whether a defendant has the minimum contacts with a forum to bring the defendant within the reach of the long-arm statute. Thus, the purposeful availment analysis applies to the long-arm determination.

George then argues that because she asserted a claim for civil conspiracy, Hall's acts are imputed to Deardorff and Wirsig. But George had to establish personal jurisdiction over Deardorff and Wirsig individually and not based on the acts of another person as part of a conspiracy.[30] We overrule this argument.

George also argues that Deardorff and Wirsig attended APHA events and Wirsig competed in APHA-sponsored events, and because APHA is headquartered in Texas, these acts constitute doing business in Texas. But George did not allege that Deardorff and Wirsig attended any of these events in Texas, much less that their contacts with Texas in connection with these events were more than just random or isolated contacts or that in attending the events

---

[30] *See Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) (affirming that it is the contacts of the defendant himself that are determinative on the question of jurisdiction and declining to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state); *Moncrief*, 332 S.W.3d at 10 n.7.

they had sought some benefit, advantage, or profit by availing themselves of the laws of this state.[31]  We overrule this argument.

George further argues that Wirsig was a customer of George, and George's business is located in Texas.  But George never alleged that Wirsig ever did business with George in Texas or otherwise alleged facts showing that by using George's services, Wirsig purposefully invoked the benefits or protections of Texas laws.[32]  We overrule this argument.

George contends that under the laws of defamation, publication of a defamatory statement is actionable, even if the publishing is done by someone other than the party making the defamatory statement, if "a reasonable person would recognize that an act creates an unreasonable risk that the defamatory matter will be communicated to a third party."  George is correct that in some cases, a party will be liable for the republication by a third party of defamatory statement made by the party.[33]  But whether Deardorff and Wirsig could ultimately be liable in a suit for defamation is not determinative of whether the

---

[31] *See Michiana*, 168 S.W.3d at 785.

[32] *See id.* ("Jurisdiction is premised on notions of implied consent—that by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there.").

[33] *See Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 639–40 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

trial court had jurisdiction over them.[34]  Instead, George must have alleged facts showing that Deardorff and Wirsig had minimum contacts with Texas.  We overrule this argument.

Finally, George argues that provision of Deardorff and Wirsig's statements to APHA directly affected George and her business.  But that their conduct in another state may have had some affect on George in this state is not enough to give Texas courts jurisdiction over them.[35]  We overrule this argument, and we hold that the trial court correctly determined that George failed to meet her burden to establish that the trial court had personal jurisdiction over Deardorff and Wirsig.

Because we have upheld the trial court's determination based on the minimum contacts analysis, we need not consider George's argument that the exercise of personal jurisdiction comports with notions of fair play and substantial justice.[36]  We overrule George's sole issue.

---

[34]*See Michiana*, 168 S.W.3d at 790–91 (rejecting a jurisdiction analysis that equates the jurisdictional inquiry with the underlying merits); *see also Kelly*, 301 S.W.3d at 660 ("Although the trier-of-fact may ultimately conclude that Kelly and Hofstatter violated the Texas Trust Fund Act and committed fraud, the mere commission of an act does not grant Texas courts jurisdiction over the actor.").

[35]*See Kelly*, 301 S.W.3d at 660–61 (stating that "jurisdictional analysis always centers on the *defendant's* actions and choices to enter the forum state and conduct business" and holding that the court of appeals erred by allowing the plaintiff's claims to proceed despite the lack of allegations and evidence that any part of the claim originated from the defendants' conduct in Texas).

[36]*See* Tex. R. App. P. 47.1.

13

Having overruled George's sole issue, we affirm the trial court's order sustaining Deardorff's and Wirsig's special appearances and dismissing George's claims against them.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

DELIVERED:  February 2, 2012

14