

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-13-00289-CV

FOX LAKE ANIMAL HOSPITAL PSP                                                        APPELLANT

V.

WOUND MANAGEMENT                                                                    APPELLEE
TECHNOLOGIES, INC.

----------

## FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

----------

## **MEMORANDUM OPINION**[1]

----------

Appellant Fox Lake Animal Hospital PSP, a business located in Illinois, sent funds to Appellee Wound Management Technologies, Inc. (WMT), a Texas corporation, under a convertible promissory note. The note, made on October 28, 2010, and due on February 28, 2011, allowed Fox Lake to convert any portion of the outstanding balance into shares of WMT at a specified price per

---

[1]*See* Tex. R. App. P. 47.4.

share.  If Fox Lake converted only part of the balance, the note's terms required WMT to execute a new note for the unconverted portion.  The note could be prepaid at WMT's option without penalty, but even in that case, Fox Lake could "elect to keep all [its] convertible features through the Due Date."  If the note was not paid back by the due date, the note called for WMT to pay Fox Lake a late fee in the form of 2,000 shares per day of cashless warrants of WMT at a specified price.  The note's terms called for WMT to make payments to Fox Lake at its office in Illinois, stated that WMT received fair value for the note, and waived any claim that any payment under the note constituted interest in excess of the maximum rate allowed by law.

Fox Lake elected to take shares in partial payment and executed a subscription agreement to that effect.  WMT subsequently sued Fox Lake in Texas on a claim for excessive interest in violation of the finance code.[2]  Fox Lake made a special appearance, which the trial court denied after a hearing.  Fox Lake now appeals from that order.  Fox Lake argues in one issue that the trial court erred by denying its special appearance.  Because we hold that the record supports the trial court's denial of the special appearance, we affirm the trial court's order.

---

[2]*See* Tex. Fin. Code Ann. §§ 305.001, .003, .004 (West 2006).

**Standard of Review and Burden of Proof**

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo.[3] In deciding the jurisdiction question, however, the trial court may be required to resolve questions of fact.[4] If the trial court issues findings of fact and conclusions of law on its denial of a special appearance, the appellant may challenge the fact findings on legal and factual sufficiency grounds, and we may review those fact findings for both legal and factual sufficiency.[5] When, as here, the trial court does not issue findings of fact and conclusions of law in support of its ruling on a special appearance, we imply all relevant facts necessary to support the judgment that are supported by evidence.[6]

The plaintiff has the initial burden to plead sufficient facts to confer jurisdiction.[7] Once the plaintiff has done so, the burden shifts to the defendant to negate all bases of personal jurisdiction pled by the plaintiff.[8] If the plaintiff fails to plead facts bringing the defendant within the reach of Texas's long-arm

---

[3] *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013).

[4] *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

[5] *Id.*

[6] *Moncrief*, 414 S.W.3d at 150.

[7] *Id.* at 149.

[8] *Id.*

statute, the defendant need only prove that he or she does not live in Texas to meet this burden.[9]

## Applicable Law

*Establishing Personal Jurisdiction*

Texas courts may exercise personal jurisdiction over nonresident defendants (1) when the Texas long-arm statute authorizes it and (2) when doing so is consistent with constitutional due-process guarantees.[10] The long-arm statute extends personal jurisdiction "as far as the federal constitutional requirements of due process will permit."[11] Thus, the Texas long-arm statute reaches as far as due process allows but no farther.[12]

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"[13] Personal jurisdiction meets constitutional due process requirements when two conditions are met: (1) the defendant has established minimum contacts with the state and (2) the exercise

---

[9]*George v. Deardorff*, 360 S.W.3d 683, 687 (Tex. App.—Fort Worth 2012, no pet.).

[10]*Moncrief*, 414 S.W.3d at 149.

[11]*George*, 360 S.W.3d at 687 (citations omitted).

[12]*See id.*

[13]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S. Ct. 2174, 2181–82 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S. Ct. 154, 160 (1945)).

4

of jurisdiction comports with traditional notions of fair play and substantial justice.[14]  Fox Lake does not make any argument on appeal regarding the second requirement.  We therefore confine our analysis to the first requirement.

*Minimum Contacts*

A nonresident defendant's contacts with a state can give rise to either general or specific jurisdiction.[15]  A state has general jurisdiction over the defendant when the defendant's contacts are continuous and systematic, in which case the forum state may exercise personal jurisdiction over the defendant even if the plaintiff's claim did not arise from or relate to activities conducted within the forum state.[16]  WMT alleged in its petition that the trial court had both general and specific jurisdiction over Fox Lake, but at the hearing, it stated that it was not asserting general jurisdiction.  We therefore consider only whether Fox Lake had minimum contacts with Texas to give rise to specific jurisdiction.

Specific jurisdiction exists when the claim arises from or is related to activities purposefully conducted in the forum state.[17]  Thus, to have minimum contacts for purposes of specific jurisdiction, a nonresident defendant must by some act have purposefully availed itself of the privileges of conducting activities

---

[14]*George*, 360 S.W.3d at 687.

[15]*Id.* at 687.

[16]*Id.* at 687–88.

[17]*Moncrief*, 414 S.W.3d at 150.

5

within Texas.[18]  It is not enough, however, that the plaintiff alleged contacts showing purposeful availment; in order for the defendant's contacts to give rise to specific jurisdiction, "there must be a substantial connection between those contacts and the operative facts of the litigation."[19]  The "operative facts" are the facts that would be the focus of the trial.[20]

Texas's long-arm statute authorizes Texas courts to exercise personal jurisdiction over a nonresident defendant who "does business" in Texas.[21]  Under the statute, a nonresident "does business" in Texas if:  the nonresident "[1] contracts . . . with a Texas resident and [2] either party is to perform the contract in whole or in part in this state."[22]  Thus, contracting with a Texas resident can satisfy the Texas long-arm statute.

Merely contracting with a Texas resident, however, does not necessarily establish the minimum contacts required in order for the exercise of personal jurisdiction to comport with due process.[23]  Due process requires that the acts

---

[18]*Id.*

[19]*Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007).

[20]*See id.*; *DENSO Corp. v. Hall*, 396 S.W.3d 681, 691 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

[21]*PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007)

[22]Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 2008).

[23]*Gordon & Doner, P.A. v. Joros*, 287 S.W.3d 325, 332 (Tex. App.—Fort Worth 2009, no pet.).

relied on to show minimum contacts must be purposeful rather than "random, isolated, or fortuitous," and in our analysis, "we consider the quality and nature of the defendant's contacts, rather than their number."[24]   Furthermore, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction.[25]   And only the *defendant's* contacts with the forum state count: a defendant should not be haled into a jurisdiction solely as a result of the "unilateral activity of another party or a third person."[26]

## Analysis

Fox Lake's sole issue is that the trial court erred by denying its special appearance.  In our analysis, we first look to see if WMT pled sufficient facts to show that Fox Lake has contacts with Texas that give rise to personal jurisdiction.  WMT alleged that

1.      Fox Lake engaged in acts doing business in Texas because it contracted with WMT, a Texas resident, and the contract was to be performed in part in this state.  In this regard, WMT executed a convertible promissory note with a principal amount of $39,000.00, although the actual amount loaned was $25,000.00.

2.      The $25,000.00 was sent by wire transfer to WMT's bank account at Branch Banking and Trust Company (BB&T).

3.      WMT executed the promissory note in Texas.

---

[24]*Id.* at 331; *Wilkerson v. RSL Funding, L.L.C.*, 388 S.W.3d 668, 675 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

[25]*Gordon & Doner*, 287 S.W.3d 331.

[26]*Id.*; *George*, 360 S.W.3d at 688.

7

4.     The promissory note was personally guaranteed by nonparty Scott Haire [CEO of WMT], and the guaranty states that it is delivered by WMT and accepted by Fox Lake in Tarrant County, Texas and is governed by Texas law.

5.     The promissory note states that it is governed by Texas law.

6.     The promissory note further provides that Fox Lake could choose to convert any portion of the note's outstanding balance into WMT shares by surrendering the note for conversion and executing an attached subscription agreement and a transfer form, and Fox Lake subsequently converted a portion of the balance of the promissory note into 80,000 shares of WMT.

7.     To obtain the shares, Fox Lake executed the subscription agreement, which states that it is governed by Texas law.

8.     The subscription agreement was either mailed to WMT at its Fort Worth address or sent by fax to WMT at that address.

9.     By executing the subscription agreement, Fox Lake directed WMT to issue share certificates from its Fort Worth office.  From its Fort Worth office, WMT caused its transfer agent located in Texas to issue 80,000 shares of WMT to Fox Lake and send the 80,000 shares of stock to Fox Lake from Texas.

10.    WMT paid Fox Lake $19,000.00 in partial satisfaction of the promissory note, and the payment was made by wire transfer from WMT's BB&T bank account in Texas to Fox Lake.

11.    When the promissory note was executed, Fox Lake caused a wire transfer of $25,000.00 to be made to WMT's bank account at BB&T.

A number of these allegations relate to acts taken by WMT or another party, not acts taken by Fox Lake.  WMT's payment to Fox Lake, WMT's selection of a transfer agent in Texas and having shares sent to Fox Lake by that

8

transfer agent,[27] and WMT's execution of agreements are acts by WMT, not by Fox Lake. Because only Fox Lake's actions give rise to jurisdiction over Fox Lake, we do not consider these allegations in determining whether WMT met its pleading requirements.[28] Similarly, the guaranty that was given to Fox Lake was made by a nonparty to this suit, and neither the terms of the guaranty nor the performance of it are at issue in WMT's claim against Fox Lake, and therefore we do not consider it in our analysis.[29]

Disregarding the guaranty and the unilateral acts of WMT, the contacts alleged by WMT are: Fox Lake sent funds to WMT's bank, and WMT's bank account is in Texas;[30] Fox Lake accepted a promissory note executed by WMT,

---

[27] *See Specht v. Dunavant*, 362 S.W.3d 752, 756 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (stating the fact that a corporation's stock transfer agent was located in Texas was "merely fortuitous"); *cf. Luxury Travel Source v. Am. Airlines, Inc.*, 276 S.W.3d 154, 164 (Tex. App.—Fort Worth 2008, no pet.) (considering the defendant's act in *deliberately inducing* its Texas customers to undertake activity *in Texas* as a relevant fact in the minimum contacts analysis).

[28] *See George*, 360 S.W.3d at 688.

[29] *See Moki Mac*, 221 S.W.3d at 585.

[30] *See Bissbort v. Wright Printing & Pub. Co.*, 801 S.W.2d 588, 589 (Tex. App.—Fort Worth 1990, no writ) (stating that the nonresident defendant "purposefully acted or consummated a transaction in Texas in initiating negotiations with its telephone call to Bissbort, by executing and returning to Texas a contract requiring it to make payment in Texas and by wiring the $51,230.00 to Bissbort's account with a bank in Texas" and holding that although the defendant's contacts with Texas were "few and limited," "because of the quality of those acts, *particularly the act of wiring a large sum of money to a Texas bank*, [the defendant] has availed itself of the protection and remedies of Texas law and Texas courts") (emphasis added). *But see Falcon Crest Aviation Supply, Inc. v. Jet Mgmt., LLC*, No. 14-11-00789-CV, 2012 WL 4364661, at *4

9

a Texas resident; the promissory note accepted by Fox Lake and the subscription agreement executed by Fox Lake were both governed by Texas law; Fox Lake chose to take 80,000 shares of a Texas company in payment on the note; and Fox Lake mailed or faxed the subscription agreement to Texas. WMT did not allege that Fox Lake solicited WMT's business (in Texas or otherwise) or that the contract negotiations took place within Texas.

When a suit arises out of a contract, as this one does, if the contract contains a choice of law provision that makes the contract governed by the law of the forum state, that provision alone is not enough to confer jurisdiction.[31] But neither should it be ignored in considering "whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes."[32] And combined with other facts, it can show a defendant's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there."[33]

Similarly, a nonresident's entering into a contract with a Texas resident does not alone necessarily confer jurisdiction over the nonresident, but the terms

---

(Tex. App.—Houston [14th Dist.] Sept. 25, 2012, no pet.) (mem. op.) (stating that because the place of payment was dictated by the plaintiff's unilateral choice, the defendant's sending payment to Texas did not support a finding of jurisdiction).

[31]*Burger King*, 471 U.S. at 482, 105 S. Ct. at 2187.

[32]*Id.*

[33]*Id.*

of the contract and the parties' dealings with each other in negotiating and performing the contract should be considered in the minimum contacts analysis.[34] Likewise, sending funds to Texas may not necessarily be enough on its own to establish jurisdiction,[35] but it is a fact to be considered along with other contacts.[36]

As alleged by WMT, Fox Lake sent $25,000 to WMT in Texas, it entered into agreements with a Texas resident that are governed by Texas law and mailed them to Texas, and it invested in and is now part owner of a Texas company. These alleged contacts substantially relate to the facts that WMT would need to prove its claim at trial, a claim that is based on the contents of and

---

[34] *Id.* at 478–79, 105 S. Ct. at 2185 (stating that "[i]f the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot" but that "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum").

[35] *Alenia Spazio, S.p.A. v. Reid*, 130 S.W.3d 201, 213 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see also Riverside Exports, Inc. v. B.R. Crane & Equip., LLC*, 362 S.W.3d 649, 654 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (holding that the nonresident defendant did not have sufficient contacts with Texas when its only contact was refunding a customer's money to a bank account in Texas; it was the plaintiff's unilateral choice to have a bank in Texas, and "given that [the plaintiff] chose its Texas domicile and chose to use a Texas bank, it is hard to conceive how [the defendant] could refund the [plaintiff's] money without some contact with Texas").

[36] *See Bissbort*, 801 S.W.2d at 589.

performance of the promissory note and subscription agreement.[37]  While Fox Lake's contacts with Texas as pled by WMT are limited,[38] when considered together they are sufficient to meet WMT's burden to plead facts to show specific jurisdiction over Fox Lake.[39]  The burden thus shifted to Fox Lake to negate WMT's jurisdictional allegations.

To negate WMT's jurisdictional pleadings, Fox Lake stated in its sworn special appearance that it is not a resident of Texas, it is a resident of Illinois, it has never conducted business in Texas, and the transaction WMT complains of and all negotiations related to it took place in Illinois.[40]  Fox Lake also attached the affidavit of Bohdan Rudawaski, Fox Lake's representative.  At WMT's objection, the trial court struck much of the affidavit, a ruling that Fox Lake does

---

[37] *See Moki Mac*, 221 S.W.3d at 585 (requiring that there be a "substantial connection" between the defendant's contacts and the operative facts of the litigation in order for personal jurisdiction to arise).

[38] *See Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009) (noting that "the minimum-contacts analysis is focused on the quality and nature of the defendant's contacts, rather than their number").

[39] *See Bissbort*, 801 S.W.2d at 589.

[40] *See* Tex. R. Civ. P. 120a(1), (3) (providing that the special appearance shall be made by sworn motion and shall be determined on the basis of the *pleadings*, stipulations of the parties, filed affidavits and attachments, discovery, and any oral testimony); *A&J Printing, Inc. v. DSP Enters., L.L.C.*, 153 S.W.3d 676, 682 (Tex. App.—Dallas 2004, no pet.) (stating that the trial court could consider the evidence set forth in the defendant's verified special appearance); *Martinez v. Valencia*, 824 S.W.2d 719, 723 (Tex. App.—El Paso 1992, no writ) (considering the sworn special appearance as evidence in review of the trial court's ruling on the special appearance).

12

not challenge on appeal. The trial court's ruling left only the following paragraphs in evidence:

> 1.      I am over the age of eighteen (18) and competent to make this Affidavit. I reside in Lake County, Illinois and at no time did I go to Texas and meet with anyone with [WMT]. My business, Fox Lake Animal Hospital Hospital [sic] PSP, a veterinary clinic, is also an Illinois entity.

> 2.      When this deal first arose, I spoke with Scott Haire, the CEO of [WMT], about its product. In this initial contact, Mr. Haire was at his office located at 6400 N. Andrews Ave., #530, Fort Lauderdale, FL 33309, during the call from animal hospital to him in Florida.

This evidence is not enough to negate the jurisdictional grounds alleged by WMT. The sworn motion and affidavit establish that Fox Lake is not a resident of Texas, that the contract negotiations did not take place in Texas, and that Rudawski never met with anyone from WMT in Texas. But it does not address any of the grounds alleged by WMT, such as Fox Lake taking shares of WMT, sending funds to WMT in Texas, and entering into agreements governed by Texas law. And none of the evidence offered by WMT and admitted by the trial court at the hearing contradicted WMT's grounds. Accordingly, we hold that the trial court did not err by denying Fox Lake's special appearance. We overrule Fox Lake's sole issue.

## Conclusion

Having held that the trial court did not err by denying Fox Lake's special appearance, we affirm the trial court's order.

13

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and GABRIEL, JJ.

DELIVERED:  April 10, 2014