

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-15-00249-CV

CHRISTOPHER HOSKINS                                            APPELLANT

V.

RICCO FAMILY PARTNERS, LTD.                                    APPELLEE

AND

## NO. 02-15-00253-CV

DENNIS ECKEL                                                  APPELLANT

V.

RICCO FAMILY PARTNERS, LTD.                                    APPELLEE

----------

FROM THE 442ND DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 14-01284-158

----------

# MEMORANDUM OPINION[1]

----------

This is an appeal from an order denying special appearances filed by appellants Christopher Hoskins and Dennis Eckel. Appellants bring three issues challenging the trial court's findings of fact and conclusions of law and contending that appellee Ricco Family Partners, Ltd. failed to plead or produce facts showing that the trial court has either general or specific jurisdiction. We affirm.

## Procedural Background

Ricco initially sued Zimba Capital, G.P. in February 2014 seeking to quiet title to property in Denton County. Ricco's petition named appellants as persons of interest who "may have an interest in the subject matter" of the suit. In May 2014, appellants each filed a document entitled "Absolute and Unconditional Disclaimer," in which they stated that they did not own or claim any "legal or equitable right, title, or interest in the land."[2] Ricco later added appellants Vista

---

[1]*See* Tex. R. App. P. 47.4.

[2]Ricco does not contend in its brief that these filings resulted in a waiver of the special appearance, and the trial court did not make such a finding in its findings of fact. Because both filings identified the suit as an "in rem" action and asserted that neither Hoskins nor Eckels owned any legal or equitable interest in the land that was the subject of the original petition, they do not appear to be inconsistent with a later denial of personal jurisdiction. *See Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004) ("[A] party enters a general appearance when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court.").

Ridge Limited Partners (the Limited Partnership) and Vista Ridge Corporation (the Corporation) as parties to the suit. Appellants, who are California residents, both filed special appearances. *See* Tex. R. Civ. P. 120a. They then filed a joint conditional answer subject to their special appearances.

After appellants filed their special appearances, Ricco filed a fourth amended petition. In that petition, Ricco pled the following facts. In 2007 and 2008, it loaned the Limited Partnership a total of $1,075,000, evidenced by promissory notes and secured by a deed of trust on property in Denton County. Appellants, who are limited partners of the Limited Partnership and directors of the Corporation, personally guaranteed the note. When appellants told Ricco that the note would not be paid on its maturity date and that tax liens had been filed on the property, Ricco began foreclosure proceedings. Ricco provided notice of the proceedings to Zimba, a second lienholder. The foreclosure took place on July 5, 2011.

After the foreclosure, Ricco, appellants, the Limited Partnership, and the Corporation entered into a hold harmless agreement, and Ricco received a quitclaim deed to the property. Because Zimba continued to claim an interest in the property, Ricco filed this suit to quiet title. In April 2014, Maracom International filed a document in the Denton County records purporting to show that Zimba had transferred its second lienholder interest to Maracom in 2010 and, therefore, that Maracom was the second lienholder at the time of the July 2011 foreclosure. The sole director of both Maracom and Zimba is Steffen

3

Waltz. Appellants along with Zimba, both Vista entities, and Waltz represented in July 2011 that Zimba was the second lienholder on the Property.

Ricco additionally alleged that Zimba, Maracom, Waltz, the Limited Partnership, the Corporation, and appellants, along with another party Richard Andreson, "acted in concert to create a false perception that Maracom had been a second lienholder on the Property before [the] foreclosure by backdating documents to reflect a prior transfer of the note and lien from Zimba to Maracom when no such transfer actually occurred." Ricco also alleged that "[t]he transfer of lien was filed against the Property after this lawsuit was instituted in an attempt to encumber and destroy [its] rights to the Property." Ricco further alleged that also in April 2014,

> Vista, through Hoskins, signed a new note to Maracom which stated that the note had been "informally" extended and a new interest rate of 10% was now being charged. This note would be used to support the alleged fraudulent lien on the Property for over one million dollars in favor of Maracom.

Ricco sought a declaratory judgment that Zimba did not transfer its second lien to Maracom before the 2011 foreclosure and that Maracom has no legal or equitable right to challenge the foreclosure because it was not a lienholder or in privity with the Vista entities when the foreclosure occurred. Additionally, Ricco brought a claim for conspiracy to create and file a fraudulent lien under section 12.001 of the civil practice and remedies code: "Defendants have created and filed a document in the Denton County public records with the intent of creating a false lien on [Ricco's] Property with intent to cause [Ricco] financial injury . . . ."

4

Tex. Civ. Prac. & Rem. Code Ann. § 12.001 (West Supp. 2015). Ricco alleged that all of the defendants acted knowingly and willfully. Finally, Ricco claimed that Maracom should be estopped from claiming any lien in the property.

As to appellants, Ricco also alleged specific instances of contact with the State of Texas that they claim constitute continuous and systematic contacts with the State. Among these, they allege the following:

> 41. [Appellants] renewed a note to Maracom knowing that no collection efforts had ever been made on the original note and that no collection efforts would be made on the renewal of this note. [Appellants] knowingly agreed to be liable for over a million dollar note knowing that the sole purpose of this note was to cloud Ricco's title.

> 42. [Appellants] are jointly and severally liable for the torts plead[ed] in this lawsuit arising out of transactions in Texas while operating Vista. [Appellants] conspired with the other Defendants to cause a fraudulent lien to be put on the Property which they had filed a disclaimer of any rights of ownership.

After a nonevidentiary hearing, the trial court denied appellants' special appearances. The trial court made the following relevant findings of fact and conclusions of law in support of its ruling:

**I.**
**FINDINGS OF FACT**

> 1. In paragraph 17 of Plaintiff's Fourth Amended Original Petition, Plaintiff alleged that prior to Plaintiff's foreclosure of the disputed property in 2011, Hoskins and Eckel together with other Texas Defendants, represented that Zimba was the second lienholder.

> 2. In paragraph 21 of Plaintiff's Fourth Amended Original Petition, Plaintiff alleged that Hoskins and Eckel acted in concert with the Texas Defendants to create a false perception that

5

Defendant Maracom had been the second lienholder at the time of Plaintiff's foreclosure of its lien, by back dating documents to reflect a transfer of the note and lien to Maracom when no transfer had occurred.

3. In paragraph 30 of Plaintiff's Fourth Amended Original Petition, Plaintiff alleged Hoskins and Eckel together with the other Texas Defendants created and filed a false document in the Denton County public records with the intent of creating a false lien on Plaintiff's property to Plaintiff's injury.

4. In paragraph 22 of Plaintiff's Fourth Amended Original Petition, Plaintiff alleged that Hoskins on behalf of Vista Ridge executed a new note with increased interest rate to increase the amount of the note to over a million dollars and which purported to be secured by the fraudulent lien filed in Denton County, Texas.

5. Plaintiff's Fourth Amended Original Petition expressly alleged that Defendants, Hoskins and Eckel were purposefully and intentionally involved with other Texas Defendants in engaging in tortious conduct in Texas *by filing a fraudulent lien in the Denton County, Texas public records to cloud Plaintiff's title to the real property in dispute*.

. . . .

**II.**
**CONCLUSIONS OF LAW**

1. Defendants Hoskins and Eckel, had the burden of negating all jurisdictional bases alleged in Plaintiff's Fourth Amended Original Petition. *Kelly v. General Interior Construction, Inc.*, 301 S.W.3d 653 (Tex. 2010).

2. Defendants, Hoskins and Eckel, need not have entered the state of Texas in the commission of their tortious acts, as long as they had purposefully directed their activities toward this State and the litigation arises from those activities. *Hagerty Partners Partnership v. Livingston*, 128 S.W.3d 416 (Tex. App. – Dallas 2004, pet. den.).

3. Plaintiff's Fourth Amended Original Petition alleged sufficient facts against Defendants, Hoskins and Eckel, to establish

6

that Defendants had committed a tort in Texas in whole or in part and thereby had done business in Texas pursuant to Section 17.042(2) Tex. Civ. Prac. & Rem. Code.

4. The evidence of Defendants, Hoskins and Eckel presented in support of their Special Appearances did not negate Plaintiff's allegations in its petition that Hoskins and Eckel purposefully engaged in tortious conduct with the other Texas Defendants to file a fraudulent lien in Denton County, Texas records to cloud Plaintiff's title.

5. Defendants, Hoskins and Eckel, as officers and directors, are not protected from liability by the "Fiduciary Shield" doctrine, because officers and directors are personally liable for their own tortious conduct even though committed in their corporate or fiduciary capacity. *SITQ E.U., Inc. v. Reata Restaurants, Inc.*, 111 S.W.3d 638 (Tex. App. – Fort Worth, 2005 pet. den.).

6. The court has personal jurisdiction of Defendants, Hoskins and Eckel, based on the principle of specific jurisdiction and further the exercise of personal jurisdiction over Defendant comports with traditional notions of fair play and substantial justice. *Hagerty Partners Partnership v. Livingston*, 128 S.W.3d 416 (Tex. App. – Dallas, pet. den.).

### Standard of Review

Whether a trial court has personal jurisdiction over a defendant is a question of law, which we review de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *TravelJungle v. Am. Airlines, Inc.*, 212 S.W.3d 841, 845 (Tex. App.—Fort Worth 2006, no pet.). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute. *Moki Mac*, 221 S.W.3d at 574; *TravelJungle*, 212 S.W.3d at 845. Once the plaintiff does so, the burden shifts to the nonresident defendant to negate all alleged jurisdictional bases. *Moki Mac*,

7

221 S.W.3d at 574; *TravelJungle*, 212 S.W.3d at 845. We review all of the evidence in making this determination. *TravelJungle*, 212 S.W.3d at 845. We may review the trial court's resolution of disputed fact issues for legal and factual sufficiency under the same standards of review that we apply in reviewing a jury's or trial court's findings of fact at trial. *Id.*

## Applicable Law

A Texas court may assert personal jurisdiction over a nonresident defendant only if the requirements of due process under the Fourteenth Amendment and the Texas long-arm statute are satisfied. U.S. Const. amend. XIV, § 1; Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–.045 (West 2015); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S. Ct. 1868, 1871–72 (1984); *Moki Mac*, 221 S.W.3d at 574.

### A. Long-arm Statute

The Texas long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants. Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–.045; *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *TravelJungle*, 212 S.W.3d at 845. That statute permits Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042; *BMC Software*, 83 S.W.3d at 795; *TravelJungle*, 212 S.W.3d at 845. The statute lists some activities that constitute "doing business" in Texas, including committing a tort, in whole or in part, in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042; *Moki Mac*, 221 S.W.3d at

8

574; *TravelJungle*, 212 S.W.3d at 845. The list of activities set forth in section 17.042 is not exclusive, however. *BMC Software*, 83 S.W.3d at 795; *TravelJungle*, 212 S.W.3d at 845.

Because the long-arm statute reaches "as far as the federal constitutional requirements for due process will allow," a Texas court may exercise jurisdiction over a nonresident if doing so "comports with federal due process limitations." *TV Azteca v. Ruiz*, No. 14-0186, 2016 WL 766927, at *2 (Tex. Feb. 26, 2016) (quoting *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010)). Therefore, in determining whether such requirements have been met, we rely on precedent from the United States Supreme Court and other federal courts, as well as our own state's decisions. *BMC Software*, 83 S.W.3d at 795; *TravelJungle*, 212 S.W.3d at 845–46.

### B. Due Process

Due process is satisfied when (1) the defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945); *TV Azteca*, 2016 WL 766927, at *2; *TravelJungle*, 212 S.W.3d at 846. A nonresident defendant who has "purposefully availed" himself of the privileges of conducting business in a foreign jurisdiction, invoking the benefits and protections of its laws, has sufficient minimum contacts with the forum to confer personal jurisdiction on a court in that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76, 105 S. Ct. 2174,

9

2183–84 (1985); *Moki Mac*, 221 S.W.3d at 575.  Three factors important in determining whether a defendant has purposefully availed itself of the forum are (1) only the defendant's contacts with the forum count, (2) the acts relied on must be purposeful rather than merely fortuitous, and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the forum.  *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005); *TravelJungle*, 212 S.W.3d at 846.

## C. General v. Specific Jurisdiction

Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction. *Helicopteros Nacionales de Colombia*, 466 U.S. at 413–14, 104 S. Ct. at 1872; *TV Azteca*, 2016 WL 766927, at *3; *TravelJungle*, 212 S.W.3d at 846.  A trial court has general jurisdiction over a nonresident defendant when that defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state.  *Moki Mac*, 221 S.W.3d at 575; *TravelJungle*, 212 S.W.3d at 846.

In contrast, specific jurisdiction is present if the nonresident defendant's alleged liability arises from or is related to an activity conducted within the forum. *Moki Mac*, 221 S.W.3d at 575; *TravelJungle*, 212 S.W.3d at 846–47.  In other words, "there must be a substantial connection between those contacts and the operative facts of the litigation."  *Moki Mac*, 221 S.W.3d at 585.  When a plaintiff

10

asserts that a trial court has specific jurisdiction over a nonresident defendant, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Moki Mac*, 221 S.W.3d at 575–76; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991); *TravelJungle*, 212 S.W.3d at 847. For a Texas trial court to have specific jurisdiction over a nonresident defendant, it is not necessary that the nonresident defendant's conduct actually occur in Texas, as long as the defendant's acts were purposefully directed towards Texas as opposed to at a specific person who merely happens to be a Texas resident. *See Calder v. Jones*, 465 U.S. 783, 789–90, 104 S. Ct. 1482, 1487 (1984); *TV Azteca*, 2016 WL 766927, at *7–8; *TravelJungle*, 212 S.W.3d at 847. As the supreme court has recently clarified,

> We explained in *Michiana* that courts cannot base specific jurisdiction merely on the fact that the defendant "knows that the brunt of the injury will be felt by a particular resident in the forum state." "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'"
>
> As Trevino notes, however, the court of appeals did not rely on the mere fact that Trevino lives in Texas and allegedly suffered harm here. To the contrary, the court agreed with Petitioners that its analysis should not focus "on where the plaintiffs felt the harm caused by the defamation if the defendants have not directed the publication or broadcast at the forum," and explained that it had "not considered [Trevino's] injury or residence in [its] analysis because it is not relevant." . . .
>
> There is a subtle yet crucial difference between directing a tort at an individual who happens to live in a particular state and directing a tort at that state. In *Michiana*, for example, the defendant allegedly directed a tort (by making misrepresentations in a phone call) at a plaintiff who lived in Texas, but that was the defendant's

11

only contact *with Texas*. By contrast, in *Keeton*, the plaintiff did not even reside in the forum state, but the defendant had "continuously and deliberately exploited the New Hampshire market" by regularly distributing its magazines there. Thus, when the magazine ran a story that allegedly defamed the plaintiff, it directed a tort at the state of New Hampshire, not just at the plaintiff. Under *Keeton*, *Calder*, *Walden*, and *Michiana*, the fact that the plaintiff lives and was injured in the forum state is not irrelevant to the jurisdictional inquiry, but it is relevant only to the extent that it shows that *the forum state* was "the focus of the activities of the defendant."

*TV Azteca*, 2016 WL 766927, at *7–8 (citations omitted).

## D.    Traditional Notions of Fair Play and Substantial Justice

Even when a nonresident has established minimum contacts with a state, due process permits the state to assert jurisdiction over the nonresident only if doing so comports with "traditional notions of fair play and substantial justice." *TV Azteca*, 2016 WL 766927, at *17 (quoting *Int'l Shoe*, 326 U.S. at 316, 66 S. Ct. at 154). Typically, "[w]hen a nonresident defendant has purposefully availed itself of the privilege of conducting business in a foreign jurisdiction, it is both fair and just to subject that defendant to the authority of that forum's courts." *Id.* (quoting *Spir Star*, 310 S.W.3d at 872). Thus, "[i]f a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice." *Id.* (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 154–55 (Tex. 2013)).

Nevertheless, we consider several factors to evaluate the fairness and justness of exercising jurisdiction over a nonresident defendant: (1) the burden

12

on the defendant; (2) the interests of the forum in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations in furthering fundamental substantive social policies. *Id.* "To defeat jurisdiction, [the defendant] must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Id.* (quoting *Spir Star*, 310 S.W.3d at 878–89).

## Analysis

The trial court did not find that Ricco pled facts showing general jurisdiction, but it did find that Ricco had pled sufficient facts showing specific jurisdiction and that the exercise of such jurisdiction would not offend traditional notions of fair play and substantial justice. Appellants contend that the trial court erred because Ricco did not plead any specific acts in furtherance of the conspiracy that appellants performed while physically present in the state of Texas. However, as we have discussed above, appellants' alleged acts need not have occurred while they were physically in the state of Texas if those acts were sufficiently directed at the state and not just a particular resident.

In *Retamco Operating, Inc. v. Republic Drilling Co.*—which the supreme court cited in *TV Azteca* and which was decided after *Michiana*—the supreme court held that Republic had "reached out and created a continuing relationship in Texas" by purchasing and taking assignment of real property interests in

13

Texas even though Republic never entered the state to do so. 278 S.W.3d 333, 339 (Tex. 2009). The court also noted that the contact was not merely fortuitous in that the location of the property is "fixed in this state." *Id.* Thus, the court held that Republic had purposefully availed itself of the privilege of conducting activities in Texas. *Id.* at 340. The court further determined that Retamco had shown a substantial connection between these contacts and the operative facts of the litigation because the value of the real property assets in Texas would have to be proven in connection with the fraudulent transfer claim alleged in that case. *Id.* at 340–41. The court concluded,

> Republic is alleged to have received transfer of Texas real property from a Texas resident, during the pendency of a Texas suit, for the purpose of defrauding a Texas resident. As a result of this transaction, assets ROI may have recovered from Paradigm are now in the possession of Republic. These contacts are sufficient to demonstrate that this alleged tort occurred at least, in part, in Texas.

*Id.* at 341.

In *Ryan Cos. US, Inc. v. Notch*, No. 10-15-00227-CV, 2016 WL 859231 (Tex. App.—Waco Mar. 3, 2016, no pet. h.) (mem. op.), the court of appeals held that the plaintiffs pled sufficient facts to show the trial court's specific jurisdiction over Notch because his alleged negligence occurred as a result of his participation in the design process for a Gander Mountain store that was being built and was to operate as an ongoing business in Corsicana, Texas. *Id.* at *4–5. In discussing directed-a-tort jurisprudence, the court noted, similarly to the supreme court in *TV Azteca*, that there is a difference between directing a tort at

14

a person who happens to live in Texas or when the injury is felt in Texas and the deliberate establishment of contacts specifically in connection with a construction project to be built on real property located in Texas. *Id.* at *4 (citing *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 665–66 (Tex. 1987), *cert. denied*, 484 U.S. 1063 (1988), and distinguishing *Michiana*).

Here, appellants have never had any individual ownership interests in the property involved in the suit,[3] like the defendant in *Retamco*. They were merely limited partners of the Limited Partnership. Although mere passive investment in a limited partnership will not amount to purposeful availment, *Nacho Remodeling Co. v. Calsherm Partners, L.P.*, No. 05-14-00048-CV, 2014 WL 3828219, at *4 (Tex. App.—Dallas Aug. 5, 2014, no pet.) (mem. op.), here, Ricco has alleged that appellants' involvement went further than merely their status as limited partners of the former property owner. Instead, Ricco contended in its pleadings that appellants were jointly and severally liable with the other defendants and that the object of the alleged conspiracy is the title to real property located in Denton County, Texas. *See Norstrud v. Cicur*, No. 02-14-00364-CV, 2015 WL 4878716, at *10 (Tex. App.—Fort Worth Aug. 13, 2015, no pet.) (mem. op.) (explaining that allegations of tortious conduct by corporate officer are sufficient to preclude protection via fiduciary shield doctrine). Ricco alleges that appellants assisted

---

[3]The mere fact of ownership of property in Texas is not sufficient to establish minimum contacts; the contact must still be purposeful and bear a substantial connection to the operative facts of the litigation. *See Johnson v. Kindred*, 285 S.W.3d 895, 903 (Tex. App.—Dallas 2009, no pet.) (op. on reh'g).

15

Waltz in backdating documents between Zimba and Maracom showing that Maracom, rather than Zimba, was the second lienholder with a security interest in the property at the time of the foreclosure, so as to enable Maracom to record documents in the Denton County property records that would create a cloud on that property's title.

Recorded instruments in a grantee's chain of title generally establish an irrebuttable presumption of notice of an interest in real property. *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007); *Aston Meadows, Ltd. v. Devon Energy Prod. Co., L.P.*, 359 S.W.3d 856, 859 (Tex. App.—Fort Worth 2012, pet. denied). As the supreme court has noted in a deed reformation suit, "The stakes are high, as reliability of record title contributes mightily to the predictability of property ownership that is so indispensable to our legal and economic systems." *Cosgrove v. Cade*, 468 S.W.3d 32, 34 (Tex. 2015). Thus, Ricco's allegations as to the purpose of the conspiracy have potentially more far-reaching effects that extend not only to Ricco's individual financial interest but also to the state's interest in maintaining stability and certainty regarding title to real property.

We conclude and hold that the alleged actions toward and injury alleged here—which are the crux of the allegations against appellants—are directed at the state of Texas rather than solely at Ricco and show purposeful availment

16

necessary to support minimum contacts for purposes of specific jurisdiction.[4] *See Ryan Cos. US*, 2016 WL 859231, at *4; *San Pedro Impulsora de Inmuebles Especiales, S.A. de C.V. v. Villarreal*, 330 S.W.3d 27, 41 (Tex. App.—Corpus Christi 2010, no pet.) (holding that trial court had personal jurisdiction over Mexican company (1) that had been formed by woman who at time of suit was ward of Cameron County solely to own real property in Texas and (2) that was alleged to have participated in a fraudulent suit in Mexico to obtain funds from the woman with the goal of ultimately depositing those funds in a Texas bank); *TravelJungle*, 212 S.W.3d at 850–51 (holding that allegations that defendant purposefully directed its alleged tortious activity to computer servers of plaintiff that were physically located in the state of Texas were sufficient to support specific jurisdiction). On that basis, this case is distinguishable from *Horowitz v. Berger*, 377 S.W.3d 115 (Tex. App.—Houston [14th Dist.] 2012, no pet.), in which the economic injuries were not directed at property itself but were allegedly suffered by and directed at individual investors in Texas property based on alleged misrepresentations made by the defendant in Israel. *Id.* at 125–27; *see also Curocom Energy LLC v. Young-Sub Shim*, 416 S.W.3d 893, 898 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (following *Horowitz* in case involving fraudulent inducement claim).

---

[4]Because we have determined that the trial court did not err by determining that it had specific jurisdiction, we need not address appellants' argument that the trial court did not have general jurisdiction. *See* Tex. R. App. P. 47.1.

17

Appellants argue that the burden shifted to Ricco to present evidence supporting all bases of jurisdiction in response to appellants' evidence conclusively negating jurisdiction and that Ricco failed to do so. When a plaintiff pleads sufficient jurisdictional allegations, the defendant bears the burden of negating all bases of personal jurisdiction alleged by the plaintiff; this burden is "tied to the allegations in the plaintiff's pleading." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *cf. George v. Deardorff*, 360 S.W.3d 683, 687 (Tex. App.—Fort Worth 2012, no pet.) (explaining that if plaintiff fails to plead sufficient facts to bring defendant within reach of long-arm statute, defendant need only prove that he or she does not live in Texas to meet burden of negating jurisdictional allegations in plaintiff's pleading). The general statement included in appellants' verified special appearances that neither has "committed a tort, in whole or in part, in Texas" is conclusory and not sufficient to shift the burden to Ricco to produce evidence supporting its specific allegations that appellants participated in a conspiracy aimed at clouding title to real property in Texas. *See Hoagland v. Butcher*, 396 S.W.3d 182, 193 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

Moreover, considering the nature of the allegations, Texas's interest in resolving a dispute potentially affecting its real property records, and the lack of any compelling evidence showing an unreasonable burden on appellants or a greater interest of the resolution of the dispute in some other state, including California, we conclude and hold that the trial court did not err by determining

18

that its exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

Accordingly, we overrule appellants' three issues.

## Conclusion

Having overruled appellants' three issues, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

GABRIEL, J., concurs without opinion.

DELIVERED:  May 12, 2016